**Christine GOLDADE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 83–32.**

Supreme Court of Wyoming.

Dec. 12, 1983.

Rehearing Denied Jan. 3, 1984.

---

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, J. Michael Sharman, Student Intern, Wyoming Defender Aid Program, Laramie, and Sylvia L. Hackl, Public Defender, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and John W. Renneisen, Senior Asst. Atty. Gen., for appellee.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE and BROWN, JJ.

THOMAS, Justice.

Are statements which identify an abuser made by a child victim to a nurse and a physician admissible in evidence under the exception to the hearsay rule articulated in Rule 803(4), W.R.E.? This is the essential question presented in this appeal, although an attack also is made upon the reliability of the statements. The district court, in a trial to the court, ruled that such statements could be received in evidence, and they were received. The appellant was found guilty by the court of child abuse in violation of § 14–3–101(a)(ii), W.S.1977, and she was sentenced to a term of six months in the county jail and a fine of $500 in accordance with the provisions of § 14–3–

103(a), W.S.1977.[1] The imposition of the sentence and fine were suspended, and the appellant was placed on probation for one year. This appeal is from that judgment and sentence. We shall affirm the trial court.

In her brief the appellant states the issues as follows:

"I. MAY A HEARSAY STATEMENT MADE BY A FOUR YEAR OLD OUT OF COURT DECLARANT BE ADMITTED UNDER THE W.R.E. 803(4) 'TREATMENT AND DIAGNOSIS' EXCEPTION WHEN THE STATEMENT ATTRIBUTES FAULT AND BLAME AND IS NOT PERTINENT TO THE TREATMENT OR DIAGNOSIS?

"II. MAY A HEARSAY STATEMENT BE ADMITTED FOR ANY PURPOSE, WHEN, UNDER THE CIRCUMSTANCES OF THE CASE, THE STATEMENT LACKS TRADITIONAL GUARANTEES OF RELIABILITY?"

The State of Wyoming has submitted a counter-statement of the issues in this case as follows:

"I. UNDER W.R.E. 803(4), DID THE TRIAL COURT ERR IN ADMITTING THE TESTIMONY OF A DOCTOR AND A NURSE CONCERNING SEPARATE OUT–OF–COURT STATEMENTS MADE BY THE VICTIM, TABATHA GOLDADE, DURING HER PHYSICAL EXAMINATION WHERE THE STATEMENTS CONCERNED THE CAUSE OF HER BRUISES, AND WERE REASONABLY PERTINENT TO TREATMENT AND DIAGNOSIS?

---

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

1. Section 14–3–101(a)(ii), W.S.1977, provides as follows:

"(a) No parent, guardian or custodian of any child shall:

> \* \* \* \* \* \*

"(ii) Abuse, torture, expose or cruelly punish the child."

Section 14–3–103(a), W.S.1977, provides as follows:

"(a) Any person violating any provision within W.S. 14–3–101 and 14–3–102 is guilty of a misdemeanor and upon conviction shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000) plus court costs or imprisoned in the county jail not more than one (1) year, or both."

These provisions were repealed by § 5 of Ch. 75, S.L. of Wyoming 1982, reiterated in § 3 of Ch. 171, S.L. of Wyoming 1983. The offense here charged has been subsumed by § 6–2–503, W.S.1977 (June 1983 Repl.), which treats child abuse as a felony.

"II. IF THE STATEMENTS OF THE CHILD WERE OTHERWISE WITHIN THE SCOPE OF W.R.E. 803(4) AS EXCEPTIONS TO THE HEARSAY RULE, DID THE UNAVAILABILITY OF THE CHILD AT TRIAL THROUGH INCOMPETENCY TO TESTIFY ALTER THE ADMISSIBILITY OF HER STATEMENTS TO THE DOCTOR AND NURSE?

"III. IF A STATEMENT IS PROPERLY ADMISSIBLE AS AN EXCEPTION TO THE HERSAY [sic] RULE, DO INDIVIDUAL CIRCUMSTANCES WHICH MAY INDICATE UNRELIABILITY GO TO THE ADMISSIBILITY OF THE STATEMENT OR MERELY TO ITS WEIGHT AND CREDIBILITY?

"IV. IF IT WAS ERROR TO ADMIT THE VICTIM'S OUT-OF-COURT STATEMENTS TO THE DOCTOR AND NURSE, WAS SUCH ERROR NONETHELESS HARMLESS?"

On August 13, 1982, the Campbell County Department of Public Assistance and Social Services (D–PASS) received a telephone call about possible child abuse involving Tabatha Goldade who then was four and one-half years old. A social worker in the D–PASS office went to the appellant's home accompanied by a deputy sheriff. Initially the social worker observed bruises on Tabatha's face which had been covered with makeup. Further visual examination disclosed bruises on other parts of Tabatha's body, and the social worker decided that the child should be examined by a physician. This was done, and the doctor in his testimony stated that there were "a lot of bruises on Tabatha." Photographs which were admitted into evidence showed bruises on Tabatha's back, chest, stomach, legs, arms and face. It was determined that these bruises were not serious injuries, although Tabatha was hospitalized for several days for observation. The doctor testified that in his opinion, which was based on the results of tests during hospitalization, Tabatha did not "tend to bruise more easily than the average, healthy child." The doctor, in his opinion, ruled out illness, childhood play and home accidents as causes of these bruises and stated that the bruises were the product of child abuse.

The record further discloses that Tabatha Goldade, together with a younger brother and a younger sister, had been residing with the appellant and her husband for the nine months preceding August 13, 1982. These three children were the natural children of Mr. Goldade's brother and his former wife. When the natural parents were divorced the mother had been found to be unfit to have custody of the children. Appellant and her husband then had accepted the children into their home at the request of the husband's brother. The appellant and her husband had talked with the same social worker for Campbell County D–PASS about adopting Tabatha and the other two children. Some paper work relating to the proposed adoption already had been accomplished. The social worker testified that he had heard Tabatha allude to the appellant as "Mommy," and there is no dispute with respect to the proposition that when Tabatha referred to "Mommy" or "Mother" she was referring to the appellant.

Tabatha Goldade was called as a witness by the State. She could not respond to questions, however, presumably because of shyness and awe. The district judge ruled that she was not a competent witness. Her testimony, therefore, was not available to the State.

The critical testimony which is in issue in this case came from the nurse who was on duty in the emergency room at Campbell County Hospital when Tabatha Goldade was brought there by the deputy sheriff and the social worker, and from a physician who specialized in pediatrics and who was called to the emergency room at the Campbell County Hospital to examine Tabatha. The testimony of the nurse is as follows:

"Q. Okay. During that time did you ask Tabatha any questions?

"A. Yes.

"Q. What was that?

"A. I did ask her how she had gotten these injuries.

"Q. And did you get a reply?

"A. Yes."

Following an appropriate objection by counsel for the appellant and argument, the transcript continues:

"THE COURT: Well, the court will overrule the objection. She may answer this question.

\* \* \* \* \* \*

"Q. Mrs. Ullrich, did you ask the little girl in question some questions?

"A. Yes. I did ask her how she incurred these injuries.

\* \* \* \* \* \*

"Q. \* \* \* Did you get a reply to that question?

"A. Yes, I did.

"Q. What was that?

"A. That her mother had done it.

"THE COURT: Now, ma'am, would you tell us as closely as possible the exact words used. That's what counsel means when he asks you to answer, not a conclusion that you made from what was said, but you state what you asked this child as closely as possible and what her reply was as closely as possible.

"A. (By Mrs. Ullrich) I did ask her how she received these—I can't remember if I used the term bruises or what I said to her because of her age, and she did reply, 'my mommy did it.'"

The critical testimony of the physician with respect to the same subject is as follows:

"Q. In your examination of this child did you have occasion to ask her any questions?

"A. Yes, I did.

"Q. What were those questions?

"A. I asked her how the bruises that were seen on her, how they had occurred.

"Q. Did you get a response?

"A. Yes."

Following a consistent objection and ruling by the district court, the testimony continued:

"Q. \* \* \* Could you tell us what that response was, Doctor?

"A. As I recall, She told me that her— she said, 'my mother beat me.'"

During cross-examination of the physician, the following testimony was elicited:

"Q. Okay. And when you went in to see Tabatha Goldade then you asked her where she got the bruises?

"A. During the course of the examination I asked her that question.

"Q. And she told you that, 'my mommy beat me'?

"A. I think she used the word 'mother.'

"Q. Okay. Mother?

"A. Uh-huh.

"Q. Are you aware of who the natural mother of this child is?

"A. I'm aware that Mrs. Goldade is not the natural mother, but I don't where—I don't know the natural mother.

"Q. All right. Did you question the child any further than that concerning those injuries?

"A. I don't think I did, no."

The district judge, following the trial, entered Findings and Order of Court in which the court specifically found:

"4. That the testimony of the doctor and the nurse as to the four year olds [sic] statement was admitted as a proper exception to Rule 803(4) of the Wyoming Rules of Evidence as an exception to hearsay."

The appellant, relying upon authority from other jurisdictions, argues most strenuously that this ruling by the district court was erroneous, and that her conviction should be reversed.

Rule 803, W.R.E., provides in pertinent part as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

"(4) *Statements for purposes of medical diagnosis or treatment.*—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general

character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

We have no quarrel with the general rule that statements attributing fault usually are not admissible under rules identical to Rule 803(4), W.R.E. See *United States v. Iron Shell*, 633 F.2d 77, 55 A.L.R.Fed. 664 (8th Cir.1980), cert. denied 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick*, 604 F.2d 1199 (9th Cir. 1979); *United States v. Narcisco*, 446 F.Supp. 252 (E.D.Mich.1977); and 4 Louisell and Mueller, Federal Evidence, § 444, p. 603 (1980). If the goal of our court were simply to pursue the common-law tradition of stare decisis, then the cited authorities must be recognized as supporting the position of the appellant. In this instance, however, the function of the court must be to pursue the transcendent goal of addressing the most pernicious social ailment which afflicts our society, family abuse, and more specifically, child abuse. We conclude in that context that the ruling of the district court was proper, and the conviction of the appellant should be affirmed.

In an instance such as this the court is confronted with a unique and special problem, and we must be concerned with an additional responsibility which is imposed upon a physician. Child abuse is recognized as encompassing more than mere physical injury. The State of Wyoming has adopted a policy which expresses concern with respect to emotional and psychological damage to the child as well. Section 14–3–205, W.S.1977, provides in pertinent part as follows:

"(a) Any person who knows or has reasonable cause to believe or suspect that a child has been abused or neglected or who observes any child being subjected to conditions or circumstances that would reasonably result in abuse or neglect, shall immediately report it to the child protective agency or local law enforcement agency or cause a report to be made.
"(b) If a person reporting child abuse or neglect is a member of the staff of a medical or other public or private institu-tion, school, facility or agency, he shall notify the person in charge or his designated agent as soon as possible, who is thereupon also responsible to make the report or cause the report to be made. Nothing in this subsection is intended to relieve individuals of their obligation to report on their own behalf unless a report has already been made or will be made."

In the definitional section of this statutory provision, § 14–3–201(a)(ii), W.S.1977, we find the following:

"(ii) 'Abuse' means inflicting or causing physical or mental injury, harm or imminent danger to the physical or mental health or welfare of a child other than by accidental means, including abandonment, excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof by reason of intentional or unintentional neglect, and the commission or allowing the commission of a sexual offense against a child as defined by law:
"(A) 'Mental injury' means an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in his ability to function within a normal range of performance and behavior with due regard to his culture;
"(B) 'Physical injury' means death or any harm to a child including but not limited to disfigurement, impairment of any bodily organ, bruising, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition;
"(C) 'Substantial risk' means a strong possibility as contrasted with a remote or insignificant possibility;
"(D) 'Imminent danger' includes threatened harm and means a statement, overt act, condition or status which represents an immediate and substantial risk of sexual abuse or physical or mental injury."

The definitional provisions ascribe importance in ascertaining whether a child has been a victim of abuse to discovering whether the injuries sustained by the child were accidental or deliberate.

Physicians and other medical service personnel are called to perform a vital role in

this state's statutory framework for the protection of children. In particular they are empowered to document suspected child abuse by photographs and X rays at state expense. Section 14–3–206(c), W.S.1977. Furthermore, § 14–3–208(a), W.S.1977, manifests a significant reliance upon medical personnel in dealing with child abuse in the following provision:

"When a physician treating a child or a medical staff member of a hospital in which a child is being treated has reasonable cause to believe there exists an imminent danger to the child's life or safety unless the child is taken into protective custody and there is not time to apply for a court order, the child may be taken into temporary protective custody without a warrant or court order and without the consent of the parents, guardians or others exercising temporary or permanent control over the child. Any person taking a child into temporary protective custody shall as soon as possible notify the appropriate local child protective agency. Upon notification, the local child protective agency shall initiate an investigation of the notification and make every reasonable effort to inform the parent or other person responsible for the child's welfare that the child has been taken into temporary protective custody."

The justification for the exception to the hearsay rule contained in Rule 803(4), W.R.E., is that the statements which are furnished are considered to be reliable and trustworthy. 4 Louisell and Mueller, supra, § 444, p. 603 (1980). As stated 4 Weinstein's Evidence, § 803(4)[01], p. 803–129 (1981):

"* * * [A]s a matter of policy, a fact reliable enough to serve as a basis for a diagnosis is also reliable enough to escape hearsay proscription. * * *

* * * * * *

"* * * Even in the case of a statement made for treatment the test is not only whether the declarant thought it relevant (thereby establishing reliability), *but also whether a doctor would have reasonably relied upon such a statement in deciding upon a course of treatment.*" (Footnotes omitted. Emphasis added.)

In reaching a conclusion as to pertinency for purposes of applying Rule 803(4), W.R.E., the courts must rely upon the view of the treating physician or the views of other medical service personnel with respect to what facts are pertinent to diagnosis and treatment. While those views may not necessarily be controlling they do suffice to support the exercise of the sound discretion of the trial court in admitting such evidence. See Louisell and Mueller, supra, p. 598 (1980). It is apparent from the testimony of the physician quoted above that he was involved in attempting to diagnose and, if diagnosed, to then treat child abuse, not simply bruises on the little girl's face. The identity of the person causing those injuries is a pertinent fact in these circumstances.

The policy of this state as it is found incorporated in the child protection statutes, makes vital the determination by physicians and others who are treating suspected child abuse cases of whether the injuries were inflicted deliberately. They also must decide whether the child may be in imminent danger, which determination is necessary in determining the propriety of temporary protective custody. In the absence of information as to the identity of any assailant of the child this latter decision cannot be made in a rational way. Given the circumstances confronting the trial court in this case, the admission of the evidence was within the sound discretion of the trial court and there has been no showing of an abuse of discretion which would permit that ruling to be disturbed on appeal. *Hopkinson v. State,* Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Sanville v. State,* Wyo., 593 P.2d 1340 (1979); and *Daellenbach v. State,* Wyo., 562 P.2d 679 (1977).

The advisory committee notes to Rule 803(4), F.R.E., which is identical to Rule 803(4), W.R.E., state in part, "Statements as to fault would not ordinarily qualify [as an admissible exception to the hearsay rule]." This rule, however, as the advisory committee note contemplates, is not with-

out exception. The Ninth Circuit Court of Appeals has affirmed the admission by a trial court of evidence, pursuant to Rule 803(4), F.R.E., of statements attributing fault given to an emergency room nurse for purposes of diagnosis. *United States v. Rhodes,* 11 Fed.Rules of Evidence Service (1982). The factual background was a child abuse case involving facts that are strikingly similar to those before this court. We hold, in a similar vein to that of the United States Court of Appeals for the Ninth Circuit, that the record in the present case is developed sufficiently with respect to the importance for purposes of diagnosis and treatment of the child's explanation of the manner in which her injuries were inflicted.

This court has pursued a policy in child homicide cases of developing rules which ultimately will assist in protecting the innocent victims of child abuse. In a series of cases this court has recognized that opportunity, together with injuries consistent with child abuse, is sufficient evidence to support a conviction for homicide. See *Marshall v. State,* Wyo., 646 P.2d 795 (1982); *Rinehart v. State,* Wyo., 641 P.2d 192 (1982); *Grabill v. State,* Wyo., 621 P.2d 802 (1980); *Seyle v. State,* Wyo., 584 P.2d 1081 (1978); and *Jones v. State,* Wyo., 580 P.2d 1150 (1978). While this standard of proof well may be a minimal one, no apology is necessary for this policy. Because of the manifest need to protect the most helpless members of our society from violence on the part of others, the policy is both necessary and proper. Affording the exception to the hearsay rule contained in Rule 803(4), W.R.E., a liberal interpretation, insofar as it applies in child abuse cases, is only a logical extension of this court's policy in the child death cases. See Comment, Evidentiary Problems in Criminal Child Abuse Prosecutions, 63 Geo.L.J. 257, 269 (1974).

The use of the terminology "battered child syndrome" to describe a diagnosis by a physician has been accepted in a number of courts. See, e.g., *People v. Jackson,* 18 Cal. App.3d 504, 95 Cal.Rptr. 919 (1971); *People v. Ewing,* 72 Cal.App.3d 714, 140 Cal.Rptr. 299 (1977); *State v. Loss,* 295 Minn. 271, 204 N.W.2d 404 (1973); *People v. Henson,* 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358 (1973); *State v. Wilkerson,* 295 N.C. 559, 247 S.E.2d 905, 98 A.L.R.3d 285 (1978); *State v. Mapp,* 45 N.C.App. 574, 264 S.E.2d 348 (1980). A discussion of the developments in the medical profession relating to the recognition of the battered child syndrome is found in McCoid, The Battered Child and Other Assaults Upon the Family: Part One, 50 Minn.L.Rev. 1 (1965). An outline of the history of the law in adopting this diagnosis can be found in case note, Evidence—Child Abuse—Expert Medical Testimony Concerning "Battered Child Syndrome" Held Admissible, 42 Fordham L.Rev. 935 (1974). The Wyoming cases cited above fit well within the pattern described by the other authorities and commentators.

The record here contains testimony by the physician that he asked the question concerning how Tabatha Goldade was injured in order to assist him with respect to a diagnosis of a child abuse syndrome. Given his duty and his professional responsibility as a physician to determine whether the child abuse "syndrome or a condition that requires treatment" was present, the statements elicited in fact were pertinent to his diagnosis and treatment. Admitting those statements into evidence pursuant to the exception contained in Rule 803(4), W.R.E., is consistent with the prior policy of this court in child abuse cases. We hold that there was no error committed by the trial court in admitting the statements into evidence.

The appellant complains that there was no guarantee of reliability with respect to these statements. The concise and correct answer to that argument is that the exception to the hearsay rule contained in Rule 803(4), W.R.E., is premised upon an assumption of reliability. The rule does not demand any further showing, and appellant has cited to us no cases which would support her position in this regard. Under the circumstances we find no error in the failure to demonstrate reliability of the statements of Tabatha Goldade. We agree with

the position of the State that at most this constitutes matter which would go to the weight, not the admissibility, of this testimony.

The record in this case also discloses that when the social worker and the deputy sheriff arrived at the Goldade residence to investigate a report of possible child abuse, the appellant was the only adult present with the victim. While this circumstance may not be sufficient to establish exclusive opportunity to inflict the injuries so far as this case is concerned, the evidence also discloses that when the child victim was examined her facial bruises were found to be covered with makeup in an apparent attempt to conceal the existence of such bruises. Such evidence might not have the same impact for all people, but it certainly is susceptible to the inference that this was an attempt on the part of the appellant to conceal criminal conduct, tantamount to an admission. The evidence is consistent with the statements given by Tabatha Goldade to the examining physician and the nurse, and essentially reports the reliability of those statements.

Finding no error in the admission of the hearsay statements contained in the testimony of the examining nurse and physician, we conclude that the judgment of the district court should be affirmed.

BROWN, Justice, dissenting, joined by ROSE, Justice, with reservations.

Although I disagree with the majority's reasoning in upholding appellant's conviction I take comfort in the fact that this court is not affirming the conviction of an innocent person. In my opinion the majority is approving appellant's conviction by the use of improper evidence.

The record contains two confessions by appellant which were ruled inadmissible before trial. Courts at all levels find it difficult to ignore inadmissible evidence, which save for a technicality would be conclusive of a defendant's guilt. Knowing that a defendant has committed the acts complained of, courts succumb to the tempta-tion to stretch, expand and distort the rules of evidence to rationalize a finding of guilt.

A casual observer might reason that no great harm is done in this case by affirming the conviction. After all, appellant committed the acts charged. The offense is only a misdemeanor and appellant is not going to jail or paying any fine. Furthermore, she will be on unsupervised probation.

My concern about the majority's reasoning and disposition is how it will be viewed as precedent.

"It is a maxim among these lawyers, that whatever has been done before may legally be done again; and therefore they take especial care to record all the decisions formerly made against common justice and the general reason of mankind. These, under the name of precedents, they produce as authorities to justify the most iniquitous opinions; and the judges never fail of directing accordingly." Jonathan Swift, Gulliver's Travels: Houyhnhnms, ch. 5.

This case could logically be cited for the proposition that when a patient tells the physician the name of the person that caused the injury the physician can tell the trier of fact, even though the identity of the person inflicting injury is not necessary to the diagnosis or treatment of the injury.

The trial court admitted the doctor's testimony under Rule 803(4), Wyoming Rules of Evidence, "Statements for Purposes of Medical Diagnosis or Treatment." I am not sure whether the majority approved the doctor's testimony under Rule 803(4), carved out a new exception to the hearsay rule or made an ad hoc determination because of expediency or policy. If the majority intended to approve the admission of the doctor's testimony under Rule 803(4), W.R.E., I think such holding is contrary to authority and results in expanding, stretching and distorting the rule.

Rule 803(4), W.R.E. is the same as Rule 803(4), Federal Rules of Evidence. Louisell & Mueller discuss that rule in Federal Evidence:

"* * * The principal reason for admitting statements made for purposes of obtaining medical treatment is that they are considered trustworthy. Usually such statements are made by the patient to his physician, and usually they describe the patient's own past and present physical sensations, and things which happened to him personally. Thus, risks of misperception and of faulty memory are minimal. Moreover, the patient will understand that his description is important in determining the treatment he will receive, so he has every reason to speak not only truthfully, but carefully, so that risks of insincerity and ambiguity are likewise minimal.

\* \* \* \* \* \*

"The pertinency standard. To be within Rule 803(4), the statement must be 'reasonably pertinent' to the treatment or diagnosis sought. * * *

"[T]he physician's belief as to what is pertinent should ordinarily control in applying the pertinency standard. * * *

\* \* \* \* \* \*

"The pertinency standard should be construed broadly enough to reach facts which would naturally be recited in a good-faith effort to provide needed information. * * *

\* \* \* \* \* \*

"But the pertinency standard does impose a true limit. Embellishments attributing fault are not reasonably pertinent. * * *"
Louisell & Mueller, Federal Evidence, § 444, pp. 592–603 (1980).

"* * * However, a declarant's statement as to who caused an injury or illness is not pertinent to medical treatment or diagnosis and is therefore inadmissible." 55 A.L.R.Fed. § 2(b), p. 694 (1981).

In *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), the trial court admitted the testimony of the doctor who examined a nine-year old victim concerning statements made by her following an assault. The court said:

"* * * It is important to note that the statements concern what happened rather than who assaulted her. The former in most cases is pertinent to diagnosis and treatment while the latter would seldom, if ever, be sufficiently related. * * *"
Id., at 84.

In *United States v. Nick*, 604 F.2d 1199 (9th Cir.1979), the examining physician was allowed under Rule 803(4), F.R.E., to repeat a three-year old child's description of the sexual assault, including the victim's statement concerning the cause of the injury. However, the court excluded any comment about the identity of the assailant.

In another reference to Rule 803(4), F.R.E., it was said:

"The rule is limited to facts related which are 'reasonably pertinent to diagnosis or treatment;' it has never been held to apply to accusations of personal fault, either in a civil or criminal context."
*United States v. Narcisco*, 446 F.Supp. 252, 289. (E.D.Mich.S.D.1977).

See also *State v. Fleming*, 27 Wash.App. 952, 621 P.2d 779 (1980).

The advisory committee notes on the rules, say:

" * * * Statements as to fault would not ordinarily qualify under this latter language. Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light. Under the exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included." Rule 803, F.R.E., 28 U.S.C.A., p. 585 (1975).

Here, then, as in most cases, the crucial question is whether the statements made by the victim to the nurse and doctor were "reasonably pertinent to diagnosis or treatment." Ms. Ullrich, the nurse, said she needed to know what type of injuries were sustained. This seems reasonable, because the answer immediately rules out other ways bruises or discoloration could have been caused. However, Ms. Ullrich did not

need to know who caused the bruises or who was at fault.

Dr. Merrill C. Horne, the treating physician, said the statement he heard from Tabatha, the victim, that her mother had beaten her did not help him to treat the bruises. However, he inferred that he was treating the victim for child abuse syndrome rather than bruises, and again he inferred but never said that the statement helped treat the child's case. The record does not tell us what the phenomenon "child abuse syndrome" is, whether it is a recognized medical phenomenon, or whether Dr. Horne is qualified to recognize and treat child abuse syndrome. Some of the deficiencies in foundation indicated above are supplied by the majority either as a result of independent research or knowledge. There is nothing in the record concerning the treatment of Tabatha that suggests that she was treated for "child abuse syndrome." Her tests, observation and treatment were for her physical injuries.

I believe that it was error to permit the trier of fact to hear or consider evidence identifying the person who assaulted the victim. The statements identifying the person who assaulted the child were not reasonably pertinent to diagnosis or treatment. Had the statements given to both Dr. Horne and Ms. Ullrich been limited to the fact that the child said she was beaten, spanked, hit or struck, they likely would have been properly admitted. This would be consistent with *United States v. Nick*, supra, where any comment about the identity of the assailant was excluded. The majority says "The identity of the person causing those injuries is a pertinent fact in these circumstances." Dr. Horne did not say that nor did any other witness.

In support of its position the State relies a great deal on *Moore v. State*, 26 Md.App. 556, 338 A.2d 344, (1975). In *Moore* a physician testified that a three and one-half year old victim told him, "Daddy was mad, Daddy did it." The court upheld the conviction and held that the statement was admissible in evidence upon the exception to the hearsay rule as an "excited utterance." Wyoming recognizes the "excited utterance" exception to the hearsay rule, Rule 803(2), W.R.E. However, the record does not disclose that this exception is applicable. Deputy Sheriff Hamilton testified that Tabatha was not crying and did not appear to be in any pain when he and Mrs. O'Brien went to the house. The nurse testified that as far as she remembered, Tabatha was not crying. There was nothing in the record to indicate that Tabatha was in the excited state of mind which would lend reliability to the statement and qualify it as admissible under the excited utterance exception to the hearsay rule. Furthermore, the State does not contend that Rule 803(2), W.R.E., is applicable. The State's reliance on *Moore v. State*, supra, is misplaced.

The State contends that the error, if any, in the admission of the victim's out-of-court statements to the doctor and nurse was harmless and that there was sufficient evidence to convict appellant even if the child's statements to the doctor and nurse were disregarded. I disagree. Without the objectional statements the State failed to prove the identity of the assailant beyond a reasonable doubt. The only evidence as to the identity of the assailant is the statements of the victim to the nurse and doctor.

It is suggested by the majority that because of appellant's custodial relationship with Tabatha she had the opportunity to abuse the child and is the most logical person to be the assailant. However, the record is insufficient to show the necessary exclusive custody. We do not know when the bruises were inflicted; we do not know if other people were with Tabatha before she was taken to the hospital. We only know that the deputy sheriff and Mrs. O'Brien did not observe any other adults at appellant's home when they picked Tabatha up and took her to the hospital. We do not know if they looked for any other adults or made any investigation to see if others had had contact with Tabatha that day or in the recent past. This circumstantial evidence standing alone is not sufficient to indicate that appellant was the assailant.

In order to bolster a shakey rationale for its determination, the majority cites *Marshall v. State,* Wyo., 646 P.2d 795 (1982) and earlier cases for the proposition that "opportunity, together with injuries consistent with child abuse, is sufficient evidence to support a conviction for homicide." In the *Marshall* case we said:

> "Trauma, consistent with child abuse, coupled with an opportunity to inflict the injuries as in this case, satisfies us that the jury was justified in accepting the circumstantial evidence against appellant rather than his denial; and there was a basis for the jury to find appellant guilty beyond a reasonable doubt." *Marshall v. State,* supra, at 799.

In *Marshall* and the other cases cited by the majority the defendants were alone with the victims at the time the injuries were inflicted. Here we do not know if appellant was alone with the victim when the injury occurred; we do not even know when the injuries occurred. The cases cited by the majority, therefore, have no application to the facts of this case.

I conclude that the majority does not disagree with the authority that I have cited. The majority says:

> "We have no quarrel with the general rule that statements attributing fault usually are not admissible under rules identical to Rule 803(4), W.R.E. * * * If the goal of our court were simply to pursue the common-law tradition of stare decisis, then the cited authorities must be recognized as supporting the position of the appellant. In this instance, however, the function of the court must be to pursue the transcendent goal of addressing the most pernicious social ailment which afflicts our society, family abuse, and more specifically, child abuse. * * *"

In the context of this statement by the majority I return to my original problem. Did the majority approve the admission of the doctor's testimony under Rule 803(4), W.R.E., did they invent a new exception to the hearsay rule, or did they approve the evidence for this special case?

There are twenty-four exceptions to the hearsay rule. I would prefer it if the majority would create a new exception to the hearsay rule or expand one of the existing exceptions to fit this set of circumstances. The "excited utterance" exception, Rule 803(2), W.R.E., or the "other exceptions" section, Rule 803(24), W.R.E., could be expressly expanded to cover this case. However, we have to stretch and distort the existing Rule 803(4), W.R.E., too much to rationally admit the doctor's testimony.

For these reasons I would remand for a new trial.

ROSE, Justice, joining in the dissent of BROWN, Justice, with the following reservations.

I join in the dissenting opinion of Justice Brown because I believe that it properly analyzes the law with respect to the admissibility of out-of-court declarations pursuant to Rule 803(4), W.R.E. I disagree, however, with the suggestion that the "excited utterance" exception, Rule 803(2), W.R.E., could be expanded to cover this case. As Justice Brown points out, the record does not support a conclusion that the child was in a state of excitement at the time that she made the statements. Therefore, the application of Rule 803(2) would require unacceptable distortion of the rule's requirements.

In addition, I see no reason to expand the existing exceptions to the hearsay rule. Rule 803(24), W.R.E., the catch-all exception, is sufficiently comprehensive to allow into evidence trustworthy, out-of-court statements, so long as all of the safeguards of that rule are met.