Argued and submitted June 25, 1986, reversed and remanded January 14, 1987

# STATE OF OREGON,
*Respondent,*

*v.*

# TAMARA VOSIKA,
*Appellant.*

## (C 84-02-30610; CA A36528)

731 P2d 449

Ivan J. Vesely, Portland, argued the cause and filed the brief for appellant.

Virginia Linder, Assistant Solicitor General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Thomas H. Denney, Assistant Attorney General, Salem, Michael D. Schrunk, District Attorney, and Kathleen Payne-Pruitt, Deputy District Attorney, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

Young, J., specially concurring.

## VAN HOOMISSEN, J.

Defendant appeals her convictions for sodomy in the first degree and sexual abuse in the first degree. ORS 163.405; ORS 163.425. She contends that the trial court erred in failing to observe the victim personally in order to assess the victim's competency to testify, in excluding witnesses from the court-room and in admitting hearsay evidence identifying her as the abuser. We reverse and remand.

In November, 1983, the three-year old victim was returned to her foster mother after a three-day visit with her mother, who is the defendant in this case. The child asked her foster mother to "touch me with your tongue like my mommy does." While being bathed, she asked her foster mother to "tickle my butt like mommy does." When the foster mother asked her what she meant, the child demonstrated. The foster mother noticed that the child's vaginal area was red and swollen. When asked why it was red, the child responded that defendant had touched her there with her tongue.

Detective Baker and a Childrens' Services Division (CSD) worker interviewed the child. Again, she demonstrated how defendant had touched her. Dr. Sabin, a specialist in behavioral pediatrics, also examined the child. Sabin described the child's vaginal area as reddened and irritated. The child talked a great deal about sexual matters. She responded to Sabin's questions about her condition by stating that her vaginal area was red because her mother had touched her there. At trial, the foster mother testified that, after the the child's visits with defendant had ceased, the child's behavior had returned to normal.

During a trial to the court, the court viewed a videotape of Sabin interviewing the child. On the basis of the videotape, the court ruled that the child was not competent to testify. The foster mother, Sabin and Baker testified about the child's descriptions of the abuse and that she had identified her mother as the abuser. The court held that the evidence was admissible under OEC 803(18a) and OEC 803(24).[1] Defendant was convicted.

---

[1] OEC 803(18a) provides that the following hearsay evidence is admissible:

"A complaint of sexual misconduct made by the prosecuting witness after the commission of the alleged offense. Such evidence must be confined to the fact that the complaint was made."

■ Defendant first contends that the trial court erred in failing to observe the child personally in order to assess her competency to testify. In *State v. Campbell,* 299 Or 633, 652, 705 P2d 694 (1985), the Supreme Court held that, to satisfy a defendant's constitutional confrontation rights, the trial court must personally observe a child and conduct a competency hearing.[2] In this case, after reviewing the videotape, the court stated:

> "The little girl just didn't seem to have the attention and the ability to respond directly to questions. I just don't see how there could be any meaningful examination or cross-examination of her."

We conclude that, absent a stipulation allowing such a procedure, viewing a videotape does not satisfy *Campbell's* requirement that the trial court must personally observe the child and conduct a competency hearing. That error alone requires that we reverse and remand for a new trial.

■ Because they may arise on remand, we address defendant's other assignments of error. Defendant contends that the trial court erred in excluding witnesses from the courtroom. She argues that exclusion violated Article I, section 10, of the Oregon Constitution.[3] She relies on *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980). In *Deiz,* the Supreme Court held that, under the Oregon constitution,

---

OEC 803(24)(a) provides that the following hearsay evidence is admissible:

> "A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

> "(A) The statement is relevant;

> "(B) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

> "(C) The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence."

[2] *See Note,* "Can You Hear What I Hear? Direction and Limitation on Allowable Hearsay Testimony in Child Sexual Abuse Cases: *State v. Campbell,*" 22 Willamette L Rev 421 (1986).

[3] Article I, section 10, of the Oregon Constitution provides:

> "No court shall be secret, but justice shall be administered openly * * *."

the press, as a member of the public, could not be excluded from a juvenile court hearing. However, the court noted that its holding

"should not be interpreted as guaranteeing the right of public access to all judicial proceedings. * * * [T]he trial court retains the right to control access by members of the press or public who would overcrowd the courtroom, attempt to interfere in the proceedings or otherwise obstruct the proceedings." 289 Or at 284.

OEC 615 provides, in relevant part:

"At the request of a party the court may order witnesses excluded until the time of final argument, and it may make the order of its own motion."

That rule is consistent with the policy of permitting exclusion of persons who might interfere in, or otherwise obstruct, the proceedings. It was enacted to prevent a witness from being influenced by hearing the testimony of a prior witness. That is sufficient reason for exclusion without violating the Oregon Constitution. We find no error.

■ Defendant next contends that the trial court erred in admitting the hearsay testimony of the foster mother, Sabin and Baker. She argues that their testimony identifying her as the abuser does not fit within any exception to the hearsay rule and, therefore, that it is inadmissible. In *Campbell,* the Supreme Court held that OEC 803(18a) permits the admission of hearsay statements of the victim of a sexual assault which show the nature of the complaint, even if those statements include some of the particulars of the offense. 299 Or at 646. Thus, the testimony of the foster mother, Sabin and Baker that the child made a complaint that she had been abused was admissible.

The remaining question is whether the evidence that the child had identified her mother as her abuser was admissible. The state concedes that the trial court erred in admitting the evidence under OEC 803(24). *See State v. Campbell, supra,* 299 Or at 640. However, it argues that Sabin's identification testimony was admissible under OEC 803(4), as a statement made for the purpose of medical diagnosis or treatment. In *Campbell,* the Supreme Court held that out-of-court statements regarding sexual abuse are not admissible under OEC

803(24), because the legislature has provided a specific exception to the hearsay rule in OEC 803(18a). 299 Or at 640. Defendant argues that, because of that holding, hearsay statements of the victim of sexual abuse are inadmissible *unless they fit within OEC 803(18a).* We disagree. Although the Supreme Court held that hearsay statements by victims of sexual abuse identifying their abusers are not admissible under OEC 803(18a), we do not read *Campbell* to hold that such statements are not admissible under any other exception to the hearsay rule. Therefore, we turn to a consideration of whether Sabin's identification testimony was admissible as a statement made for the purpose of diagnosis or treatment.

OEC 803(4) provides that the following hearsay evidence is admissible:

> "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception of general character of the cause of external source thereof in so far as reasonably pertinent to diagnosis or treatment."

The state argues that, because Sabin is a specialist in behavioral pediatrics and because of the special nature of the treatment required for intrafamily sexual abuse, the statements were part of the information needed to diagnose or treat the child for child abuse.

The Supreme Court has previously recognized the special problems associated with intrafamily sexual abuse. *See State v. Middleton,* 294 Or 427, 436, 657 P2d 1215 (1983). Other jurisdictions that have dealt with the admissibility question involved here have also recognized the special problems associated with intrafamily sexual abuse and that the identity of the abuser is often an important element in diagnosing or treating the victim. *See United States v. Renville,* 779 F2d 430 (8th Cir 1985); *Goldade v. State,* 674 P2d 721 (Wyo 1983), *cert den* 476 US 1253 (1984).

In *Goldade,* the Wyoming Supreme Court held that statements a four-year-old victim of abuse made to a nurse and a physician describing the abuse *and identifying her abuser* were admissible under the treatment or diagnosis exception to the hearsay rule. The child had been found to be incompetent to testify at trial. The appellate court agreed that, generally, statements attributing fault are not admissible

under a statute identical to OEC 803(4). However, the court emphasized the fact that child abuse frequently encompasses more than just the *physical* injury to the child.

"The justification for the exception to the hearsay rule contained in Rule 803(4), W.R.E., is that the statements which are furnished are considered to be reliable and trustworthy. * * * As stated in 4 Weinstein's Evidence, § 803(4)[01], p. 803-129 (1981):

" '* * * [A]s a matter of policy, a fact reliable enough to serve as a basis for a diagnosis is also reliable enough to escape hearsay proscription. * * *

" '* * * * * *

" '* * * Even in the case of a statement made for treatment the test is not only whether the declarant thought it relevant (thereby establishing reliability), *but also whether a doctor would have reasonably relied upon such a statement in deciding upon a course of treatment.*'

"In reaching a conclusion as to pertinency for purposes of applying Rule 803(4), W.R.E., the court must rely upon the view of the treating physician or the views of other medical service personnel with respect to what facts are pertinent to diagnosis and treatment. While those views may not necessarily be controlling they do suffice to support the exercise of the sound discretion of the trial court in admitting such evidence. * * * It is apparent from the testimony of the physician quoted above that he was involved in attempting to diagnose and if diagnosed, to then treat child abuse, not simply bruises on the little girl's face. The identity of the person causing those injuries is a pertinent fact in these circumstances.

"The policy of this state as it is found incorporated in the child protection statutes, makes vital the determination by physicians and others who are treating suspected child abuse cases of whether the injuries were inflicted deliberately. *They also must decide whether the child may be in imminent danger, which determination is necessary in determining the propriety of temporary protective custody. In the absence of information as to the identity of any assailant of the child this latter decision cannot be made in a rational way.* Given the circumstances confronting the trial court in this case, the admission of the evidence was within the sound discretion of the trial court and there has been no showing of an abuse of

discretion which would permit that ruling to be disturbed on appeal. * * *

"The advisory committee notes to Rule 803(4), F.R.E., which is identical to Rule 803(4), W.R.E., state in part, 'Statements as to fault would not ordinarily qualify [as an admissible exception to the hearsay rule].' This rule, however, as the advisory committee note contemplates, is not without exception. The Ninth Circuit Court of Appeals has affirmed the admission by a trial court of evidence, pursuant to Rule 803(4), F.R.E., of statements attributing fault given to an emergency room nurse for purposes of diagnosis. *United States v. Rhodes,* 11 Fed. Rules of Evidence Service (1982). The factual background was a child abuse case involving facts that are strikingly similar to those before this court. We hold, in a similar vein to that of the United States Court of Appeals for the Ninth Circuit, that the record in the present case is developed sufficiently with respect to the importance for purposes of diagnosis and treatment of the child's explanation of the manner in which her injuries were inflicted.

"* * * * *

"The record here contains testimony by the physician that he asked the question concerning how Tabatha Goldade was injured in order to assist him with respect to a diagnosis of a child abuse syndrome. Given his duty and his professional responsibility as a physician to determine whether the child abuse 'syndrome or a condition that requires treatment' was present, the statements elicited in fact were pertinent to his diagnosis and treatment. Admitting those statements into evidence pursuant to the exception contained in Rule 803(4), W.R.E., is consistent with the prior policy of this court in child abuse cases. We hold that there was no error committed by the trial court in admitting the statements into evidence." 674 P2d at 726. (Footnotes and citations omitted; emphasis supplied.)

Similar reasoning was found in *United States v. Renville, supra.* There, an eleven-year-old child was sexually abused by her stepfather. The *Renville* court stated:

"The crucial question under the rule is whether the out-of-court statement of the declarant was 'reasonably pertinent' to diagnosis or treatment. In *United States v. Iron Shell,* 633 F.2d 77 (8th Cir. 1980), *cert. denied,* 450 U.S. 1001, 101 S. Ct. 1709, 68 L. Ed. 2d 203 (1981), this court set forth a two-part test for the admissibility of hearsay statements under rule 803(4): first, the declarant's motive in making the statement

must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis. *Id.* at 84. *See also Roberts v. Hollocher,* 664 F.2d 200, 204 (8th Cir. 1981). The test reflects the twin policy justifications advanced to support the rule. First, it is assumed that a patient has a strong motive to speak truthfully and accurately because the treatment or diagnosis will depend in part upon the information conveyed. The declarant's motive thus provides a sufficient guarantee of trustworthiness to permit an exception to the hearsay rule. *Iron Shell,* 633 F.2d at 84. Second, we have recognized that 'a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription.' *Id.* \* \* \*

"The court in *Iron Shell* recognized, however, that a declarant's statements relating the identity of the individual allegedly responsible for his injuries or condition 'would seldom, if ever,' be reasonably pertinent to treatment or diagnosis. 633 F.2d at 84. The court relied in part on the advisory committee notes to rule 803(4), which conclude that statements of fault ordinarily are not admissible under the rule. The notes suggest, as an example, that 'a patient's statement that he was struck by an automobile would qualify, but not his statement that the car was driven through a red light.' Fed.R.Evid. 803(4) advisory committee note. \* \* \* Statements of fault generally meet neither criterion for admission set forth in *Iron Shell.* Statements of identity seldom are made to promote effective treatment; the patient has no sincere desire to frankly account for fault because it is generally irrelevant to an anticipated course of treatment. Additionally, physicians rarely have any reason to rely on statements of identity in treating or diagnosing a patient. These statements are simply irrelevant in the calculus in devising a program of effective treatment.

"The court in *Iron Shell* and the Advisory Committee used words of generality, however, not exclusion. *Iron Shell,* 633 F.2d at 84 (statements of fault 'would seldom' be pertinent); Fed.R.Evid. 803(4) advisory committee notes (statements of fault 'not ordinarily admissible'). We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment.

"Statements of this kind differ from the statements of fault identified by the Rules Advisory Committee and properly excluded under our past decisions in a crucial way: they are reasonably relied on by a physician in treatment or diagnosis. First, child abuse involves more than physical injury; the physician must be attentive to treating the emotional and psychological injuries which accompany this crime. The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser. The general rule banning statements of fault is premised on the assumption that the injury is purely somatic. This is evident from the examples put forth by the courts and commentators discussing the rule. * * * In each example, the medical treatment contemplated was restricted to the physical injuries of the victim; there is no psychological component of treatment which could relate to the identity of the individual at fault. Furthermore, in each example the statement of fault is not relevant to prevention of recurrence of the injury. Sexual abuse of children at home presents a wholly different situation.

"Second, physicians have an obligation, imposed by state law, to prevent an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse. This obligation is most immediate where the abuser is a member of the victim's household, as in the present case. Information that the abuser is a member of the household is therefore 'reasonably pertinent' to a course of treatment which includes removing the child from the home.

"* * * * *

"We therefore believe that statements of identity to a physician by a child sexually abused by a family member are of a type physicians reasonably rely on in composing a diagnosis and course of treatment. Admission of these statements, therefore, is fully consistent with the rationale underlying the second component of the *Iron Shell* test." 779 F2d at 436. (Footnotes and citations omitted.)

Other cases support the conclusion that identification testimony is relevant to diagnosis or treatment. *See Stallnacker v. State,* 715 SW2d 883 (Ark App 1986); (1985); *State v. Herbert,* 480 A2d 742 (Me 1984); *People v. Wilkins,* 134 Mich App 39, 349 NW2d 815 (1984); *State v. Gregory,* 78 NC App 565, 338 SE2d 110 (1985), *rev den* 342 SE2d 901 (1986);

*State v. Smith,* 315 NC 76, 337 SE2d 833 (1986).[4] *See also* Moore, "The Medical Diagnosis and Treatment Exception To Hearsay - The Use Of The Child Protection Team In Child Sexual Abuse Prosecutions," 13 *N Ky L Rev* 51 (1986). Oregon statutes also require that medical personnel report all suspected cases of child abuse. ORS 418.740(3); ORS 418.750. We find the reasoning in *Goldade* and *Renville* persuasive, and we adopt it.

In this case, the child's statements meet the second part of the *Iron Shell* test. Clearly, the information that her mother was the abuser was important in diagnosing the abuse and *treating* the child. Sabin had a duty to report the abuse. Further, in determining whether appropriate treatment included removing the child from her mother's home to protect her from more abuse, Sabin needed to know whether her mother was causing the abuse. Sabin also testified that, because the child's mother was the abuser, she recommended psychotherapy for both the child and the mother. The overall course of treatment for the child, including discontinuing visits with her mother, was based on the knowledge that it was her mother inflicting the abuse. Sabin clearly relied on that fact in diagnosing the problem and recommending treatment.

*Renville* also dealt with the first part of the *Iron Shell* test, the requirement that the victim make the statement for the purpose of receiving treatment.

> "Statements of identity in this unique context also meet the first part of the *Iron Shell* test, which focuses on the declarant's motivation for giving the information. As we discussed above, this component reflects the premise underlying the rule that the patient's selfish interest in receiving proper treatment guarantees the trustworthiness of the statements. Statements of fault traditionally have failed to meet this criterion. Ordinarily, when an individual identifies the person responsible for his injuries or condition, he does so without reasonable expectation that the information will facilitate treatment.

---

[4] We note that some courts have held that the identification testimony is not relevant to diagnosis or treatment. *See Sluka v. State,* 717 P2d 394 (Alaska App 1986); *State v. Reidhead,* 146 Ariz 314, 705 P2d 1365 (1985); *State v. Belotti,* 383 NW2d 308 (Minn App 1986). However, in a case such as this, where the abuser is the victim's mother, it is unreasonable to conclude that knowledge of the identity of the abuser is not pertinent to diagnosing or treating the victim.

"However, this conclusion rests on the obvious assumption that the declarant is responding under the impression that he is being asked to make an accusation that is not relevant to the physician's diagnosis or treatment. This assumption does not hold where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding. In such circumstances, the victim's motivation to speak truthfully is the same as that which insures reliability when he recounts the chronology of events or details symptoms of somatic distress." 779 F2d at 438.

In this case, the victim was too young to understand that the statements she was making could be related to her diagnosis or treatment. However, that does not end our inquiry. As noted in *Goldade,* the justification for the exception is that the statements that are furnished are considered to be reliable and trustworthy. 674 P2d 726. In this case, the statements themselves were inherently reliable. The child requested that Sabin do the same thing to her that her mother had done. She volunteered that her mother sometimes hurt her "bottom" and "tickled" her "bottom." She responded to Sabin's questions about her condition by stating that her vaginal area was red because her mother had touched her there. The child spoke about things of which a child of her age normally would not be aware;[5] she spoke in language appropriate to her age;[6] and she repeated her statements on several occasions to different people without deviation from her original statements. The statements themselves were reliable and trustworthy,[7] and Sabin relied on those statements in her diagnosis or treatment of the child. That is sufficient under 803(4).

---

[5] The child repeatedly asked Sabin to tickle her bottom (indicating her vaginal area) and asked whether Sabin was going to put her fingers in the child's bottom. The child also attempted to insert a plastic toy into her vagina.

[6] The child spoke of her "butt" and her "bottom," and asked to be licked there. Although on one occasion she was treated for injury to her rectum, she referred to her vaginal area as her "bottom." She demonstrated to Sabin the area she was referring to when she spoke about her "bottom."

[7] In recognizing the inherent trustworthiness and reliability of the child's statement, we are *not* relying on OEC 803(24) as a basis for admitting the identification. The trustworthiness and reliability of a statement is relevant to *all* exceptions to the hearsay rule. *See Dutton v. Evans,* 400 US 74, 91 S Ct 210, 27 L Ed 2d 213 (1970); *State v. Farber,* 295 Or 199, 666 P2d 821, *appeal dismissed* 464 US 987 (1983).

■■ We conclude that, when it is shown that a physician reasonably relied on the victim's identification of her abuser as a family member in diagnosing or treating the victim, the physician may testify about the victim's identification of her abuser.[8] Therefore, Sabin's testimony about the identification the child made was admissible. OEC 803(4).

Reversed and remanded.

**YOUNG, J.,** specially concurring.

I concur in the majority's opinion, except to the extent that it holds that Dr. Sabin's testimony about the identification which the child made is admissible. As to the latter holding, I believe that the majority has taken an impermissible end run around *State v. Campbell,* 299 Or 633, 705 P2d 694 (1985).

In *Campbell,* the court held that it was error to admit unexcited hearsay declarations of child sexual abuse under the so-called residual hearsay exception of OEC 803(24). 299 Or at 640. As I understand *Campbell,* such hearsay is admissible only if it fits within one of the specific exceptions to the rule.[1] One of those exceptions is OEC 803(4):

> "*Statements made for purposes of medical diagnosis or treatment* and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause of [*sic:*or] external source thereof in so far as reasonably pertinent to diagnosis or treatment." (Emphasis supplied.)

I agree with the majority's adoption of a two-part test for the admissibility of hearsay statements under the rule:

> "[F]irst, is the declarant's motive consistent with the purpose

---

[8] To conclude otherwise would result in an untenable situation — that very young children, who are victims of child abuse and who are unable to testify because of immaturity are left to the mercy of their abusers; they may be abused *in private* without the abuser ever being concerned about being identified by the *only* witness to the crime.

[1] I do not understand *State v. Campbell, supra,* as limiting the admissibility of such evidence to OEC 803(18a), given the court's obvious implication that such evidence could be admitted under the excited utterance exception of OEC 803(2):

> "[C]ounsel miss the main reason this testimony cannot be admissible under the residual hearsay exception. That reason is that the legislature made a conscious decision to restrict *unexcited* hearsay declarations of sexual misconduct by enacting OEC 803(18a) * * *." 299 Or at 640. (Emphasis supplied.)

of the rule; and second, is it reasonable for the physician to rely on the information in diagnosis or treatment." *United States v. Iron Shell,* 633 F2d 77, 84 (8th Cir 1980).

I assume that the second requirement is met here. It is the majority's analysis of the first requirement that troubles me.

OEC 803(4) plainly requires that the statement be made for the purposes of diagnosis or treatment. The reason for that requirement is the reason why the exception exists at all; the patient's selfish interest in receiving proper treatment guarantees the trustworthiness of the statement. *See* Legislative Commentary to OEC 803(4), *reprinted in* Kirkpatrick, *Oregon Evidence* 360-61 (1982). The majority admits that "the victim was too young to understand that the statements she was making could be related to her diagnosis or treatment." 83 Or App at 309. On this record, I agree with that conclusion. For that reason, in my view, the hearsay was not admissible under OEC 803(4).

The majority, however, goes on to hold that the hearsay is admissible under OEC 803(4), because it is "inherently reliable" for other reasons. 83 Or App at 309. I cannot agree that those other reasons are relevant to whether the hearsay was admissible under the specific exception of OEC 803(4). By so holding, the majority has rewritten OEC 803(4) by incorporating the residual hearsay exception in OEC 803(24) into OEC 803(4). *State v. Campbell, supra,* does not permit that.