Argued and submitted May 23, 1988, affirmed July 26, reconsideration denied November 9, petition for review denied December 28, 1989
(308 Or 660)

## STATE OF OREGON,
*Respondent,*

*v.*

## ARTHUR WILLIAM NEWBY,
*Appellant.*

(86-971; CA A45352)

777 P2d 994

Wm. Timothy Lyons, Oregon City, argued the cause for

appellant. With him on the brief was J. Kevin Hunt, Oregon City.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals the judgment on his jury conviction for sodomy in the first degree. ORS 163.405. He contends that the court erred in admitting hearsay testimony and in not granting his motion for a mistrial. We affirm.

Defendant was indicted for rape in the first degree, ORS 163.375, and sodomy in the first degree, ORS 163.405, arising from conduct involving his daughter, who was then six years old.[1] At the time of trial, she was eight years old. She testified that, while she was visiting defendant at his home in the summer of 1985,[2] he took her into his room, made her undress, took off his clothes, touched her "private spot" and put his penis in her mouth. She also testified that she did not report the incident to her mother until March, 1986, because defendant had threatened to kill her mother if she did.

After the victim had testified, two physicians testified about their interviews with and examinations of her. Both physicians recounted her identification of defendant as the person who had abused her and her statements concerning the incident. Their recitation of what the victim had said was similar to her testimony. The court allowed the doctors' testimony over defendant's pretrial objection and his objection during the first doctor's testimony that it was inadmissible hearsay. The jury found defendant guilty of first degree sodomy and not guilty of rape in the first degree.

1.      Defendant objected to the physicians' testimony only on the ground that it was hearsay. The state argued that the testimony was admissible as a statement for medical diagnosis or treatment. OEC 803(4). That rule provides that certain statements are not excluded as hearsay, even though the declarant is available as a witness:

"Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general

---

[1] Another charge stemming from the incident, sexual abuse, ORS 163.425, was dismissed before trial. Defendant was separately indicted for sodomy of his son. The court dismissed that charge during the consolidated trial.

[2] At the time of the incident, defendant and the children's mother were separated. However, the couple's three children visited defendant throughout the summer of 1985.

character of the cause of external source thereof in so far as reasonably pertinent to diagnosis or treatment."

The state argues that, under *State v. Vosika,* 83 Or App 298, 731 P2d 449, *clarified* 85 Or App 148, 735 P2d 1273 (1987), the evidence is admissible, despite the fact that it identified defendant as the perpetrator. *See* OEC 803(18a). In *Vosika,* we adopted an interpretation of OEC 803(4) that paralleled the interpretation of FRE 803(4) in *United States v. Iron Shell,* 633 F2d 77 (8th Cir 1980), *cert den* 450 US 1001 (1981). First, the declarant's motive in making the statement to the medical provider must be to promote treatment or diagnosis and, second, the content of the statement must be such as the provider would reasonably rely on in treatment or diagnosis. We held that the three-year-old declarant was too young to understand the purposes of her statements to the physician and that his testimony regarding her statements was not admissible under OEC 803(4). We did conclude, however, that the child's statements to the doctor met the second part of the *Iron Shell* test. It was, we said, important for diagnosis and treatment for the physician to know, *inter alia,* the identity of the victim's abuser.

**2.** Unlike in *Vosika,* the record here supports a finding that the victim understood that she was being interviewed and examined by the doctors for the purpose of diagnosis and treatment. At the time of the physical examination, the victim was seven years old. The child's mother accompanied her to the doctor's offices for the examination. She testified on direct examination:

"Q. Did you go into the room where the medical examination was done?

"A. In the beginning, yes. But not while the exam was taking place; I wasn't there.

"Q. How long were you in there?

"A. *Just long enough to introduce [the victim] and tell her what she was there for and she was a doctor and I went out in the waiting room.*

"Q. And what did you say during the time you and Dr. Bays and [the victim] were together?

"A. *Just she was a doctor and she had to examine her like any other doctor had, and that she could trust her, and be*

*honest with her. And if she asked questions, to answer questions."* (Emphasis supplied.)

Dr. Bays also testified about her first encounter with the victim:

"Q. Would you describe what [she] said to you?

"[Objection raised and overruled].

"A. I asked her, usually ask the children, *'Do you know why you came to see me?' And she said, 'Because I have been abused.'* " (Emphasis supplied.)

There is no basis to conclude that a seven-year-old child cannot or that this child did not understand that the purpose of the interviews was for diagnosis or treatment related to child abuse.

Here, as in *Vosika,* the victim's statements were such as a physician would reasonably rely on for diagnosis or treatment. Dr. Bays, one of the examining physicians, testified that she needed a complete history, including the name of the abuser, in order to diagnose child abuse properly and to treat the resulting physical and psychological harm. The court did not err in overruling defendant's objection to the testimony.

**3.** Defendant also contends that the court erred in denying his motion for mistrial. The mother of the victim had been married to defendant at the time of the crime, but the marriage had been dissolved before trial. The mother testified that she and defendant had separated a number of times during the marriage and that the last separation was in January, 1983. The prosecutor then asked:

"Q. Without telling me the specifics, what were your feelings toward [defendant] at the time of that separation?

"A. Very afraid.

"Q. Pardon me?

"A. Very afraid.

"Q. Why were you afraid?

"[Defendant's Attorney]: Objection.

"THE COURT: She can testify.

"[Defendant's Attorney]: Your Honor, she is not on trial. These aren't allegations regarding her.

"THE COURT: She can testify.

"BY [Prosecutor]:

"Q. Please answer the question?

"A. Because I had been beaten and raped and because he was starting to abuse the children, Scott specifically."

Defendant again objected and subsequently moved for mistrial.

Defendant's first objection to the testimony was not comprehensible, but he finally argued to the trial court that the witnesses' statements were evidence of other "bad acts" that should be excluded. The court struck the testimony after ruling on defendant's objection but denied the motion for mistrial. It instructed the jury to disregard the statements. Defendant argues that the evidence was so damaging that the cautionary instruction was not sufficient to remove the taint.

If there was a trial disaster, defendant was, in part, its architect. He intended to introduce evidence that the victim's mother had made an allegation that he had raped her during the time when they were separated. The state asked for a pretrial ruling on the admission of that evidence. The court did not rule on the matter precisely. During his opening statement, defendant's counsel said that the evidence would show that the mother claimed that defendant had raped her on two occasions. He presented such evidence and discussed it in closing argument. The trial court was understandably confused as to why defendant would object to evidence that he had intended to offer. In the context of the evidence, the arguments and the court's instruction, we conclude that it did not abuse its discretion in denying the motion for mistrial.

Affirmed.