Argued and submitted March 17; resubmitted En Banc October 13, affirmed
December 22, 1999

In the Matter of
Christopher Pfaff, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Christopher PFAFF,
*Appellant.*

(9703-80720; CA A99785)

994 P2d 147

Lisa Ann Kay argued the cause for appellant. With her on the brief was Lynn M. Travis.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Presiding Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim and Brewer, Judges.

HASELTON, J.

Edmonds, J., dissenting.

Armstrong, J., dissenting.

Wollheim, J., dissenting.

**HASELTON, J.**

Child appeals from the juvenile court's judgment that determined that he engaged in conduct that, if committed by an adult, would constitute two counts of harassment, ORS 166.065, and one count of endangering the welfare of a minor, ORS 163.575. Child contends that the trial court erroneously admitted certain hearsay testimony pertaining to the endangering count and that, without that testimony, the state's proof as to that count was insufficient. Child further contends that the state failed to adduce sufficient corroboration of child's admissions of the acts constituting harassment. On *de novo* review, ORS 419A.200(5), ORS 19.125(3), we affirm.

Child, who was 13 at the time of the juvenile hearing, lived with his mother, his 11-year-old brother, Eddie, and his mother's boyfriend. As described more fully below, in March 1997, both child and mother spoke with Wendy Jensen, a licensed clinical social worker who works primarily with adolescent sexual offenders, about child's interactions with Eddie. The purpose of those interviews was to evaluate child's sexual conduct and his potential for "acting out" in the future. Following those interviews, Jensen produced an evaluation, stating that child may have engaged in "reportable" sexual conduct. As a result of that report, Oregon State Police Detective Kenneth Poggi interrogated child for approximately two hours at his middle school on May 9, 1997. Subsequently, in June 1997, the Multnomah County Juvenile Department filed a petition, alleging, in part:

"ENDANGERING THE WELFARE OF A MINOR * * *

"[Child], on or between January 1, 1996, and May 5, 1997 in the County of Multnomah, State of Oregon, did unlawfully and knowingly cause, Edward Pfaff an unmarried person under the age of eighteen years, to witness an act of sexual conduct, to wit: masturbation, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

"* * * * *

"HARASSMENT * * *

"Between the 1 day of January, 1996 and the 5 day of May, 1997, in the County of Multnomah, State of Oregon, [child] did unlawfully and intentionally harass and annoy Edward Pfaff, by subjecting Edward Pfaff to offensive physical contact by urinating on him.

"* * * * *

"HARASSMENT * * *

"Between the 1 day of January, 1996 and the 5 day of May, 1997, in the County of Multnomah, State of Oregon, [child] did unlawfully and intentionally harass and annoy Edward Pfaff, by subjecting Edward Pfaff to offensive physical contact by smearing feces on him."[1]

The juvenile court hearing on the petition occurred September 10, 1997. At the outset, child's counsel moved unsuccessfully to suppress child's statements to Poggi on the grounds that child did not knowingly and voluntarily waive his right against self-incrimination. In addition to Poggi's testimony, the state also presented testimony by Jensen. Jensen stated that child had admitted to her that he had urinated on Eddie and wiped feces on Eddie. Jensen also testified, over child's hearsay objections, that mother had told her (Jensen) that Eddie had complained to mother about child masturbating in front of him and urinating and smearing feces on him. Child, Eddie, and mother all testified at the hearing and denied that the alleged conduct had occurred.[2] The trial court concluded:

"I am satisfied beyond a reasonable doubt that the remaining three allegations occurred which was * * * the Endangering of the Welfare of a Minor and the two Harassment charges. I'm satisfied about those charges, quite frankly,

---

[1] The petition included other allegations, which the trial court ultimately determined that the state had failed to prove and, consequently, are not at issue on appeal.

[2] Mother acknowledged that she had told Jensen that Eddie had complained about child smearing feces on him but said that she told Jensen that child had only been "pretending." Mother also testified, with respect to the urination, that she told Jensen that, when the two boys would go to the bathroom at the same time, "they both peed on each other"—as they were urinating in the toilet, "the urine splashed and got on both of them." Finally, with respect to the masturbation complaint, mother denied that Eddie had ever told her that child masturbated in front of him or that she had conveyed such a complaint to Jensen. Rather, mother testified that child had merely engaged in making "masturbation gestures."

because there's a great deal of corroboration on all of those charges, including the admissions made to the therapist in this particular case."

On appeal, child argues that the trial court erred in (1) denying his motion to suppress his statements to Poggi; (2) admitting as substantive evidence Jensen's double hearsay recounting of mother's recounting of Eddie's statements to her; and (3) concluding that the evidence warranted adjudication on the endangerment count and the two harassment counts. We do not address child's first argument because his statements to Poggi are, ultimately, immaterial to our disposition. As amplified below, regardless of the admissibility of those statements, the remaining evidence warrants adjudication on all three counts.

We begin with the endangerment count, which alleged that child masturbated in Eddie's presence. The *only* direct evidence of that conduct was Jensen's testimony, on which the trial court expressly relied:

> "[By Jensen]: As far as sexual acting out that [mother] stated [child] had engaged in, she stated that she had received complaints about sexualized behavior from both her other son and from the school.
>
> "* * * * *
>
> "She stated to me that the other brother, Eddie, had complained of [child] putting his finger in his, Eddie's, anus, that he had smeared feces on Eddie, that he had exposed himself to Eddie, and that he had violated Eddie's privacy in the bathroom by barging in on him. That he had urinated on him in Eddie's bed and that he had masturbated in front of Eddie. That is what she, what [mother] told me."

Child contends that, without that testimony, the evidence could not support an adjudication on the endangerment count. The state acknowledges that "the court testimony which definitively establishes the appellant's conduct towards his brother was the therapist's recitation of the sexualized conduct as described by appellant's mother to Jensen."

■ At trial, child objected to the quoted testimony as double hearsay. Although child ultimately conceded that Eddie's statements to mother fell within the "sexual abuse" exception to the hearsay rule, OEC 803(18a)(a), (b),[3] he argued that the second leg of the hearsay, mother's statements to Jensen, did not fall within any exception to the hearsay rule and, thus, could not be treated as substantive evidence. *See* OEC 805 ("Hearsay included within hearsay is not excluded under [OEC 802 of the hearsay rule], if each part of the combined statements conforms with an exception set forth in [OEC 803 or OEC 804]."). The state, after initially asserting that mother's statements to Jensen regarding Eddie's complaints fell within the "medical diagnosis or treatment" exception, OEC 803(4), ultimately conceded that that exception was inapposite. The state asserted, however, that mother's statements were admissible as a prior inconsistent statement of a witness, OEC 801(4)(a), as an admission by a party-opponent, OEC 801(4)(b), or as a statement against interest, OEC 804(3)(c). The court ruled that the testimony was admissible, without specifying the basis of that ruling, and then, as noted, relied on the testimony as substantive evidence.[4]

On appeal, child reiterates his argument that mother's statements to Jensen recounting Eddie's complaints to her did not fall within any exception to the hearsay rule. The state, which conceded at hearing that the medical diagnosis or treatment exception was inapposite, now invokes

---

[3] OEC 803(18a)(a) states that the following shall not be excluded as hearsay regardless of the declarant's availability:

"A complaint of sexual misconduct or complaint of abuse as defined in ORS 419B.005 made by the witness after the commission of the alleged misconduct or abuse at issue. Except as provided in paragraph (b) of this subsection, such evidence must be confined to the fact that the complaint was made."

Because Eddie was available to testify—and did, in fact, testify—at the hearing, his statements were admissible as substantive evidence in their entirety, OEC 803(18a)(b), and not merely to prove "the fact that the complaint was made." OEC 803(18a)(a).

[4] After an extended colloquy, the court observed:

"Well, at this point I'm going to * * * receive the statements and then we can argue a little bit later about for what purpose. I don't think 801(4) applies because those are prior statements that are made under oath as opposed [to] statements made to a third party, but—Okay."

The court and the parties never revisited the issue.

that exception as a basis for affirming the trial court's admission of, and reliance on, that testimony as substantive evidence. The state asserts, alternatively, that mother's statements to Jensen constituted admissions against penal interest, OEC 804(3)(c), or, in all events, were admissible under the residual hearsay exception, OEC 803(26). For the reasons that follow, we conclude that mother's statements to Jensen recounting Eddie's complaints were admissible under the "medical diagnosis or treatment" exception to the hearsay rule and, thus, that the trial court did not err in treating that testimony as substantive evidence.

■ We first consider whether the state, having conceded the inapplicability of OEC 803(4) before the trial court, can invoke that exception on appeal. The state, reciting the familiar "right for the wrong reason" proposition that we will affirm an evidentiary ruling on any correct alternative basis, *see, e.g., State v. Nielsen*, 316 Or 611, 629, 853 P2d 256 (1993), contends that its prior concession was immaterial.[5] Although the state's disavowal of its concession is troubling, we agree that, on this record, the concession is not preclusive.

■ Our conclusion in that regard is ultimately grounded on the pragmatic principles underlying the "right for the wrong reason" doctrine and, more broadly, preservation requirements. In *Nielsen*, the court explained the reasoning underlying the "right for the wrong reason" doctrine. There, the court sustained the trial court's admission of a hearsay statement notwithstanding that the trial court relied on "improper considerations" as support for its ruling. 316 Or at 629. In so holding, the court quoted with approval the rationale articulated by the United States Supreme Court in *Securities Comm'n v. Chenery*, 318 US 80, 88, 63 S Ct 454, 87 L Ed 626 (1943):

" '[W]e do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct "although the lower court relied upon a wrong

---

[5] As noted, the trial court did not describe its rationale for admitting and relying on the double hearsay testimony as substantive evidence. Consequently, it is possible, at least, that the court relied on OEC 803(4) notwithstanding the state's contrary concession. *See generally State v. Bea*, 318 Or 220, 224, 864 P2d 854 (1993) (courts are not bound by state's "concession concerning a legal conclusion").

ground or gave a wrong reason." \* \* \* The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate. But it is also familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury.'"

316 Or at 629 n 12. *See also id.*, quoting with approval *Clark v. City of Los Angeles*, 650 F2d 1033, 1036 (9th Cir 1981):

" '[I]f the grounds given by the district court for admissibility of the evidence are incorrect, the court's ruling will be reversed only if there are no grounds under which the evidence could properly be admitted \* \* \*.'"

The court in *Nielsen* consequently concluded:

"Where a trial judge makes a correct ruling admitting evidence but articulates an erroneous reason for it, there is no need to reverse. *See* OEC 103 ('Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected')." 316 Or at 629 (footnote omitted).

*Nielsen*'s explication was consonant with, albeit more comprehensive than, a line of authority applying the doctrine. *See, e.g., Huff v. Bretz*, 285 Or 507, 519, 592 P2d 204 (1979); *State v. Dowell*, 274 Or 547, 552 n 4, 547 P2d 619 (1976); *State Farm Fire v. Sevier*, 272 Or 278, 298-99, 537 P2d 88 (1975). Because our review in this case is *de novo*, *Sevier* is particularly instructive:

"We are reluctant to reverse a trial court on grounds or theories other than those on which a case is tried and decided unless the parties have been afforded an opportunity to submit further briefs or argument. The considerations are different in cases in which we affirm a trial court. In such cases, when the trial court arrived at a correct result, but on grounds different than those which, in our opinion, are more proper as the basis for such a result, we believe that it is not improper to affirm the trial court; provided, of course, that the pleadings are sufficiently broad and there is sufficient evidence in the record, as in this case.

"We believe that this is particularly proper in suits in equity, which we try de novo on appeal." 272 Or at 298-99.

Thus, the primary principle underlying the doctrine is that we will not gratuitously reverse a trial court. That is, if the trial court's result is, ultimately, correct, then we will affirm on alternative grounds to avoid an unnecessary remand. The necessary and practical predicate for applying that principle is that the record is adequately developed to support the alternative grounds. *See, e.g., id.* at 298. If, however, the alternative ground for affirmance—and, particularly, for admission of evidence—is asserted for the first time on appeal and if it appears that the opposing party could have developed the record differently had that ground been raised at trial, then preservation principles preclude reliance on the new, alternative ground. *See generally Griffith v. Blatt*, 158 Or App 204, 210, 973 P2d 385, *rev den* 329 Or 287 (1999) (declining to address "new and qualitatively different arguments which, if raised below, might well have affected the development of the evidentiary record").

How does the state's concession, or waiver, before the trial court affect the application of those principles in this case? Ordinarily, one would assume, the concession that a particular hearsay exception is inapposite would preempt adequate development of a record establishing the foundation for that exception. Thus, in most cases, such a concession would, as a practical matter, preclude resort to the "right for the wrong reason" doctrine. In this case, however, our review of the entire record persuades us that the foundational requisites for admission under OEC 803(4), *see* 164 Or App at 481-86, were, in fact, further explored. That is, we do not believe that the state's concession materially affected the development of the record with respect to the (in)applicability of OEC 803(4).

The issue thus reduces to whether, pragmatic considerations aside, the state's concession *qua* "waiver" somehow precludes invocation of the "right for the wrong reason" principle. We conclude that it does not. In *State v. Bailey*, 143 Or App 285, 292, 924 P2d 833 (1996), we considered whether the state's disclaimer and concession of a legal issue before

the trial court precluded us from revisiting, and predicating our affirmance on, that matter. We concluded that it did not:

"On first blush, it might seem appropriate to hold the state to its legal concession below. * * * However, such an approach cannot be squared with this court's essential function. We are an error-correcting court; we reverse or modify trial court rulings only if those rulings are erroneous as asserted by the party assigning or cross-assigning error. *See Wesley v. Woods*, 42 Or App 85, 89, 600 P2d 421 (1979). Reducing that jurisprudential abstraction to concrete terms, we must determine in this case whether the denial of the suppression motion was erroneous for the reasons defendant urges. * * * That is so regardless of the state's concession." *Id.* (citation omitted; footnote omitted).

We conclude, for the same reasons, that the state's concession before the trial court in this case does not preclude our consideration of OEC 803(4) as an alternative ground for the admission of Jensen's double-hearsay testimony. Consequently, we address the application of OEC 803(4).

■ We return to OEC 805. That rule provides:

"Hearsay included within hearsay is not excluded under Rule 802 (ORS 40.455) if each part of the combined statements conforms with an exception set forth in Rule 803 or 804 (ORS 40.460 or ORS 40.465)."

Thus, if each leg of the double hearsay "conforms with an exception" to the hearsay rule, then the double hearsay is admissible. *See* Legislative Commentary to OEC 805, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence*, 626 (3d ed 1996) ("As a matter of principle, it scarcely seems open to doubt that the hearsay rule should not call for exclusion of a hearsay statement which includes a further hearsay statement when both conform to the requirements of a hearsay exception.").

■ Here, child concedes that the first leg—Eddie's statements to mother—was admissible under the "child sex abuse" hearsay exception, OEC 803(18)(a). Counsel for child acknowledged the applicability of that exception at trial, and, on appeal, child's brief expressly concedes:

"The first strand of hearsay, Eddie's statements to his mother, were admitted pursuant to Rule 803(18)(a). *The*

*child does not challenge that ruling on appeal.*" (Emphasis added.)

During oral argument on appeal, counsel for the state noted that concession—that it was "not contested"—and child's counsel did not disagree. Thus, the *sole* issue presented on appeal is the admissibility of the second leg of the double hearsay, *i.e.*, mother's statements to Jensen.[6]

■ OEC 803(4) provides that certain statements are not excluded as hearsay, even though the declarant is available as a witness:

> "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof insofar as reasonably pertinent to diagnosis or treatment."

To be admissible under OEC 803(4), a statement must meet three requirements:

> "(a)  The statement must be 'made for purposes of medical diagnosis or treatment';
>
> "(b)  The statement must describe or relate 'medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof';
>
> "(c)  The statement must be 'reasonably pertinent to diagnosis or treatment.' " *State v. Moen*, 309 Or 45, 55, 786 P2d 111 (1989).

---

[6] Notwithstanding child's explicit concession, Judge Edmonds's dissent argues that Eddie's statements did not satisfy the requirements of OEC 803(18)(a)(b). *See* 164 Or App at 489-92 (Edmonds, J., dissenting). The dissent contends that we should, in fairness, engage in such a *sua sponte* analysis because we are not holding the state to its concession before the trial court. *Id.* at 490 (Edmonds, J., dissenting).

The dissent is wrong for at least two related reasons. First, although it is axiomatic that we may affirm on grounds not argued to the trial court, there is no authority for the proposition that, without invoking "plain error," we can *reverse* the trial court on grounds not argued to it. Second, far from invoking "plain error" on appeal, child explicitly conceded the admissibility of the first leg of the double hearsay.

Given child's concession and principles of preservation, we will not engage in any analysis of the admissibility of Eddie's statements to mother.

The statements need not be made to a physician. Rather, "[s]tatements to hospital attendants, ambulance drivers or even members of the family or friends may be within the scope of the exception." Legislative Commentary to Rule 803(4), *reprinted in* Kirkpatrick, *Oregon Evidence* at 522; *see State ex rel Juv. Dept. v. Cornett*, 121 Or App 264, 270, 855 P2d 171 (1993), *rev dismissed* 318 Or 323 (1994) (rejecting argument that "OEC 803(4) does not apply, because the person hearing the statements did not have a medical degree": "[T]he issue is not whether the treating therapist who heard [the child's] statements possesses certain credentials. The issue is whether the statements meet the three requirements described in *Moen* * * *.").

■    OEC 803(4), by its terms, does not require that the declarant be the person diagnosed or treated. Rather, the rule refers broadly to "statements" describing their purpose and nature, without any reference to the declarant's status.[7] *See* Kirkpatrick, *Oregon Evidence* at 523 (OEC 803(4) "allows statements by persons other than the person who is the subject of the diagnosis or treatment").[8] *State v. Bauman*, 98 Or App 316, 319, 779 P2d 185 (1989), is exemplary. There, in a

---

[7] *Compare*, *e.g.*, OEC 803(2) ("statements relating to a startling event or condition made while *the declarant* was under the stress of excitement * * *") (emphasis added); OEC 803(3) ("statement of *the declarant's* existing state of mind * * *") (emphasis added). In contrast, OEC 803(4) does not state "statements made for purposes of medical diagnosis or treatment and describing the declarant's medical history * * *").

[8] The federal courts and courts of other states have reached similar conclusions. *See*, *e.g.*, *U.S. v. Yazzie*, 59 F3d 807, 813 (9th Cir 1995) ("The plain language of [FRE 803(4)] does not limit its application to patient-declarants. * * * In most circumstances, we believe the statements to a doctor by a parent of an injured child could easily qualify as a statement for the purpose of obtaining a proper medical diagnosis."); *Wilson v. Zapata Off-Shore Co.*, 939 F2d 260, 272 (5th Cir 1991) (same); *State v. Huntington*, 216 Wis 2d 671, 575 NW2d 268, 277 (1998) ("Young children cannot independently seek out medical attention, but rely on their caretakers to do so. A parent's interest in obtaining necessary medical care for a child demonstrates fundamental indicia of reliability."). *See generally* Weinstein & Berger, *Weinstein's Federal Evidence* § 803.09[3] at 803-43 (2d ed 1997):

"The statements need not refer to declarant's own physical condition. Statements relating to someone else's symptoms, pain or sensations are admissible, provided that they are made for purposes of diagnosis or treatment of that person. The relationship between declarant and patient will usually determine admissibility. * * * As the relationship becomes distant, the statement becomes less reliable, both because the motive to tell the truth becomes weaker, and because a stranger, even in good faith, may not be able to describe another's physical pain and suffering as reliably as an intimate."

prosecution for sexual abuse of a child, the state at trial offered the testimony of a physician who testified that the child's mother had told the physician that the child had been abused by her babysitter's boyfriend.[9] The defendant objected to that testimony as hearsay, and the trial court overruled that objection. On appeal, we affirmed that ruling, concluding that the physician's recounting of the mother's statements fell within OEC 803(4):

> "Defendant objected only to testimony regarding medical history, because it 'is from the mother as opposed to the child.' Under OEC 803(4), statements made for medical diagnosis and treatment by a family member other than the person who is the subject of diagnosis or treatment are admissible." 98 Or App at 319-20.

■ Conversely, the mere fact that the patient's parent is the declarant does not automatically establish the requisite motivation—*i.e.*, that "the declarant's motive in making the statement to the medical provider must be to promote treatment or diagnosis." *State v. Newby*, 97 Or App 598, 601, 777 P2d 994, *rev den* 308 Or 660 (1989). Rather, as with any other foundational fact, the declarant's motivation, which is the touchstone of reliability,[10] must be assessed by the court on a case-by-case basis.[11]

---

[9] It is not apparent from our published opinion whether the mother's statements to the physician were based on the child's statements to mother or on mother's own observations. However, our review of the briefs in *Bauman* makes it clear that mother was not present at the time of the abuse and that her only source of information was the child's statements.

[10] *See* Legislative Commentary to OEC 803(4), *reprinted in* Kirkpatrick, *Oregon Evidence* at 522 (rationale for admitting statements is "declarant's strong motivation to be truthful").

[11] *Compare* Weinstein & Berger, *Weinstein's Federal Evidence*, § 803.09[3], at 803-43 ("In the case of a child, a court would surely presume the absence of any motive to mislead on the part of the parents.") *with U.S. v. Yazzie*, 58 F3d at 813:

> "A parent's statement to a doctor identifying the assailant in a child molestation case must be treated as suspect. Indeed, one of the most bitter ironies of these cases is that the perpetrators are usually parents or relatives who are supposed to act in the child's best interest. * * * In the drama that unfolds during the medical examination of a child molestation victim, a parent or guardian's motive for casting blame may or may not be in the child's best interest or for the purpose of medical diagnosis. For example, a parent might misidentify the assailant in an effort to protect the other spouse, to avoid reprisal from the other spouse, to avoid having suspicion cast upon him or her, or to incriminate falsely the other spouse for personal motives.

> "Since child molestation cases challenge our assumptions about why certain statements might have been made, inquiry into the declarant's purpose

This case differs in two respects from most other reported cases involving nonpatient declarants. First, the declarant here, child's mother, was not relating her own observations;[12] rather, she was relating hearsay. Second, the statements that mother recounted were not statements by the child/patient, but by a third person (Eddie) who was not the object of treatment.

The first variable is illustrated by the difference between two statements by a parent to the doctor treating his child: "I saw my child throw up last night" and "My child told me that she threw up last night." Absent extraordinary circumstances subverting its reliability, *see, e.g.,* 164 Or App at 482 n 11, the doctor's recounting of the first statement is clearly admissible under OEC 803(4) as proof that the child did, in fact, throw up. Whether the doctor's double-hearsay recounting of the second statement is admissible as substantive evidence depends on satisfying the requirements of OEC 805—*i.e.,* both the child's statement to the parent, and the parent's statement to the physician must fall within an exception to the hearsay rule. Absent unusual circumstances, the child's statement to the parent would, by itself, be admissible under OEC 803(4)—that statement was made to the parent for the purposes of medical treatment, describes symptoms and covers information that is "reasonably pertinent to diagnosis or treatment." Similarly, the parent's recounting of the child's statement to the physician also falls within OEC 803(4) because that recounting is for purposes of medical diagnosis and treatment, etc. Thus, the double hearsay is admissible to establish that the child actually threw up.

That reasoning implicitly underlay our holding in *Bauman.* This case is analogous to *Bauman* and to the double-hearsay hypothetical just considered except, unlike in

---

must be exacting. When a party seeks to introduce the statement of parent or guardian identifying a sexual offender, the proponent must demonstrate from the context and content of the statements that they were made for the purpose of medical diagnosis or treatment."

[12] *See, e.g., Lovejoy v. U.S.*, 92 F3d 628, 632 (8th Cir 1996) (physician's testimony, recounting mother's statement that she had seen defendant standing over child with an erection and the child's underwear had been pulled down, was admissible under FRE 803(4)).

those cases, the patient/child here was not the source of the original "first leg" hearsay statement. Rather, the original statement, describing child's conduct, was made by a third party (Eddie) and was, in turn, recounted by mother for the purpose of assisting in child's diagnosis and treatment.

■    In this case, that distinction is immaterial. Here, as in *Bauman*, the original statement fell within an exception to the hearsay rule—OEC 803(18a)(b)—and, thus, was substantive evidence so long as mother's statements to Jensen similarly "conform[ed] with an exception" to the hearsay rule. OEC 805.[13] Mother's statements to Jensen did so "conform" in that they satisfied OEC 803(4), just as did the mother's statements in *Bauman*: Mother recounted Eddie's complaints to Jensen for the purpose of assisting child's diagnosis and treatment; those complaints, relating child's conduct, described and related to child's "symptoms"; and, as Jensen confirmed, they were pertinent to her diagnosis of child and her evaluation of the need for therapy. *See Cornett*, 121 Or App at 281 (statements made by child's sex abuse victim to her treating therapist identifying her abuser were admissible under OEC 803(4)).

Mother's recounting of Eddie's complaints was for the purpose of assisting in the diagnosis and treatment of child. In determining mother's motivation, we must refer to "the circumstances in which those statements were made." *State v. Barkley*, 315 Or 420, 424, 846 P2d 390 (1993). Here, Jensen, who specialized in working with adolescent sexual offenders, testified that she evaluated child after a referral from another therapist who had been "providing therapy to

---

[13] To be sure, Eddie did not make his statements to mother for the purpose of obtaining treatment for child, but that is not controlling. Under OEC 805 the different elements of "hearsay within hearsay" may, and often do, fall under different exceptions. Indeed, the Legislative Commentary to OEC 805 provides the following illustrations:

"Another example is a dying declaration which incorporates a declaration against interest by another declarant. Still another is a police accident report that contains an assertion by one driver made immediately after a collision. The driver's statement may be an excited utterance, and the police report a business record. The police report should be admissible as against a hearsay objection to prove the truth of the driver's excited utterance." Legislative Commentary to OEC 805, *reprinted in* Kirkpatrick, *Oregon Evidence* at 626-27.

the family." At the outset, Jensen explained to both child and mother the purpose of the evaluation:

> "I explained * * * what the interview process would be about and what the purpose of the evaluation was for. * * *
>
> "It was, it was narrowly focused to look at sexual history and [child's] potential for acting out in the future, sexual acting out."

Mother's statements were, thus, made in the context of, and were informed by, that explanation. *See State v. Logan*, 105 Or App 556, 562, 806 P2d 137, *rev dismissed* 312 Or 16 (1991) (court could conclude from therapist's statements to child declarant that child's motivation in making statements was to obtain diagnosis and treatment). Mother's own testimony was consistent with Jensen's rendition, and understanding, of the purpose of the interview:

> "Q. [By child's counsel]: Is it fair to say you were a concerned parent, saw things, and wanted to go to check on it?
>
> "A. Yeah."

Mother's testimony also effectively refutes the premise underlying Judge Edmonds's dissent, *i.e.*, that mother's statements to Jensen were somehow unreliable. *See* 164 Or App at 490 (Edmonds, J., dissenting). There is no reason why mother, who was seeking help for child, would lie in recounting Eddie's complaints. Indeed, mother had every reason to accurately recount Eddie's statements, and none to lie. Similarly, Jensen had no reason to lie. It was *that* "reliability" reality that underlay the trial court's ultimate credibility-based disbelief of mother's denials at trial.[14]

■■ The trial court, thus, did not err in admitting and treating the double hearsay as substantive evidence and, particularly, in relying on Eddie's complaints to mother as substantive evidence that child had, in fact, masturbated in Eddie's presence. The trial court's adjudication of child on the endangerment count ultimately rested on a credibility determination—*i.e.*, that that evidence was more credible than the

---

[11] The only person who may have had even a colorable reason for fabrication—sibling dynamics—would have been Eddie. However, as noted, child concedes on appeal that Eddie's statements "conform with" OEC 803(18)(a).

family members' denials. On *de novo* review, we give substantial deference to a trial court's credibility determinations. *See, e.g., State ex rel Juv. Dept. v. G.P.*, 131 Or App 313, 322-23, 884 P2d 885 (1994) (Haselton, J., concurring). Accordingly, we affirm the adjudication on the endangering count.

■ We turn to the two harassment counts. The primary evidence with respect to those counts was Jensen's testimony that child had admitted to her that he had urinated on, and rubbed feces on, Eddie. Child contends that those admissions were insufficient to support an adjudication on the harassment counts because they were not corroborated. *See* ORS 136.425(1) ("nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed"). We disagree.

The same double hearsay that proved the endangerment count sufficiently corroborates child's admissions of the conduct underlying the harassment count. Eddie complained to mother not only about child masturbating in front of him but also about the conduct alleged in the harassment counts. For the same reasons that the trial court treated Eddie's complaints as credible evidence with respect to the endangering count, it properly viewed those complaints as credible and sufficient corroboration of child's admissions with respect to the harassment counts. *See State v. Lerch*, 296 Or 377, 398, 677 P2d 678 (1984) ("some proof" in ORS 136.425(1) "means that there is enough evidence from which the jury may draw an inference that tends to establish or prove that a crime has been committed").

Affirmed.

**EDMONDS, J.,** dissenting.

The majority holds that the trial court properly admitted evidence of double hearsay statements under OEC 805 that led to the adjudication of child as a juvenile offender for committing what would be the offense of endangering the welfare of a minor, ORS 163.575, and for two counts of harassment, ORS 166.065, if he were an adult. Because I believe that the majority's decision is erroneous under OEC

805 and establishes a precedent that will result in the convictions of others based on unreliable evidence, I dissent.

For purposes of the discussion of the facts in this case, I will refer to the adjudicated child as Christopher, to his 11-year-old brother, the alleged victim of the offenses, as Eddie, to their mother as "mother" and to the licensed clinical social worker who testified in court about mother's statements to her as Jensen. The only direct evidence that the majority relies on to adjudicate Christopher on the endangering charge is Jensen's recital of mother's statements to her. With regard to the harassment charges, the majority deems Jensen's testimony sufficient corroboration of Christopher's confession under ORS 136.425(1). In her testimony, Jensen testified about mother's report of what Eddie had told her regarding Christopher's conduct, including the details of the incidents that led to the adjudications. At the hearing, both mother and Eddie denied making the statements that Jensen attributed to them. Christopher objected to Jensen's testimony on the grounds of double hearsay. His objection is well-taken under OEC 802,[1] unless the testimony qualifies as an exception to the rule. The majority holds that the evidence falls within an exception to OEC 802 because mother's statements to Jensen were made for purposes of medical diagnosis under OEC 803(4)[2] and Eddie's statements to mother were complaints of sexual misconduct under OEC 803(18a)(a) and (b).[3] Because OEC 805 says that "[h]earsay included within

---

[1] OEC 802 provides, "Hearsay is not admissible except as provided in [OEC 801 to 806] or as otherwise provided by law."

[2] OEC 803(4) provides:

"Statements made for purposes of medical diagnosis, or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause of external source thereof insofar as reasonably pertinent to diagnosis or treatment."

[3] OEC 803(18a) provides, in part,

"(a) A complaint of sexual misconduct or complaint of abuse as defined in ORS 419B.005 made by the witness after the commission of the alleged misconduct or abuse at issue. Except as provided in paragraph (b) of this subsection, such evidence must be confined to the fact that the complaint was made.

"(b) A statement made by a child victim * * * if the child * * * testifies at the proceeding and is subject to cross-examination * * *. However, when a witness under 12 years of age * * * is unavailable as a witness, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a

hearsay is not excluded under [OEC 802] if each part of the combined statements conforms with an exception set forth in [OEC 803 or 804]," the majority reasons that Jensen's testimony about mother's report to her of what Eddie said to mother is admissible as evidence. I disagree for the reasons that follow.

## I. THE STATE'S CHANGE OF THEORY ON APPEAL

Our review of whether Christopher has committed the alleged offenses is *de novo* on the record made to the trial court and based on evidence that we hold to be admissible. ORS 419A.200(5). The most troubling difficulty with the majority's reasoning in its *de novo* review of the evidence is that it affirms the trial court on a ground conceded by the state below, but asserted on appeal.[4] On the other hand, it accepts what it considers to be a concession made by Christopher's counsel on appeal that Eddie's statements to mother were admissible under OEC 803(18a) to avoid analyzing whether the sole evidence upon which it relies for an adjudication of the harassment charge is reliable, even though Christopher's counsel argued at the hearing that the "allegations endangering the welfare of a minor and the two harassment charges do not come in under that exception." The majority's reasoning permits the state to change horses in mid-stream and creates an untenable precedent for purposes of other cases subject to our *de novo* review. The bottom line is that when we review *de novo*, we ought to hold the parties to the concessions that they make below. Otherwise, we risk depriving opposing parties of the benefits that result from concessions and upon which they relied.

With that perspective in mind, I turn to the record below. Christopher's counsel told the trial court,

---

criminal trial that there is corroborative evidence of the act of abuse or sexual conduct and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted."

[1] As the Supreme Court said in *State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975), "Appellate courts are limited in their scope of review. Generally, on appeal the case, criminal or civil, should be heard on the same theory upon which it was presented in the court below[ ]—except where important considerations of public policy are encountered in the solution of a case before the court." (Citation omitted.)

"Since some of the statements will be from Eddie to mom, mom to counselor, both those statements are hearsay and so, therefore, both of those statements are hearsay and so, therefore, both those statements have to fall within a hearsay exception.

"And I would submit to the Court that mom's statements to the counselor do not fall under any exception. And my guess is the state's going to argue that it falls under some sort of medical diagnosis exception. * * *

"* * * * *

"I think the most relevant is cause or source of injury which is used a lot of times in sex abuse cases where the victim is saying why they're injured and how they were injured. This case is completely different. My client isn't saying that he was injured and his behavior caused his own injury. And so, therefore, I feel all that, none of the statements fit under the medical diagnosis exception."

In response to these comments, the deputy district attorney told the trial court, "I would concede that as I think of it." The trial court responded, "Okay." Later, after Christopher's counsel reiterated that the state did not contend that the evidence fell within the statements made for medical purposes exception, the trial court remarked, "Right, doesn't fall within medical diagnosis exception, and if it were being offered, would be offered only for impeachment —." The parties and the court then embarked on a discussion about the admissibility of Jensen's testimony on other grounds. At one point, the deputy district attorney said, "what we really have here is a confession, and we're merely trying to corroborate the confession." Eventually, the trial court ruled, "I'm going to receive the statements, and then we can argue a little bit later about for what purpose."

The majority quotes a portion of child's brief on appeal in support of its contention that child's purported concession in his brief controls. The full quote is as follows:

"The first strand of hearsay, Eddie's statements to his mother were admitted pursuant to [OEC 803(18a)]. The child does not challenge that ruling on appeal. Ms. Jensen's testimony of the mother's statements were properly admitted as impeachment through prior inconsistent statements.

Trial counsel for the child did not object to the State's evidence of prior inconsistent statements to impeach the testimony of the mother. [citations omitted]. *If the court in fact relied on Ms. Jensen's testimony as substantive evidence, that ruling was error.*" (Footnote omitted and emphasis added.)

I agree that we should not be bound by the parties' arguments concerning the applicability of a statutory rule when interpreting it. I also agree that, in general, a trial court can be affirmed on a different basis from the one on which it ruled. Neither of those rules control here. In this *de novo* trial, fundamental fairness requires that we hold both parties to their concessions made below. It is apparent that the state offered Jensen's testimony to corroborate child's confession and did not base its prosecution solely on the evidence on which the majority relies to find that Christopher committed the offenses. It is also apparent that child took the position below that Jensen's testimony did not meet the requirements of OEC 803(4) and OEC 805, and the state agreed. Defendants subject to criminal prosecutions on appeal should be entitled to depend on concessions made by the state at trial. Any concession made by Christopher on appeal is necessarily qualified by the concessions of the state. Because our review should be applied in an even-handed manner to achieve justice, I would not permit the state to prevail on a theory first advanced on appeal. Judge Wollheim's approach is correct because it would adjudicate the case on the record made below. Should the state receive the benefit of its argument made on appeal, then fairness demands that for purposes of *de novo* review, the issue of the admissibility of Eddie's statement to mother and mother's statement to Jensen are both properly before us based on Christopher's entire argument to the trial court.

## II.  OEC 803(18a)(a) AND (b)

OEC 805 is predicated on the principle that before the whole can be admitted, "each link in the chain [must] bear[ ] a sufficient mark of trustworthiness." Legislative Commentary to OEC 805, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence,* 626 (3d ed 1996). I turn first to Eddie's statement to mother and its purported admissibility under OEC 803(18a)(a). The exception to the hearsay rule in OEC

803(18a)(a) and (b) does not reflect a long-standing exception to the hearsay rule that is "firmly rooted" in the common law. *State v. Renly*, 111 Or App 453, 460, 827 P2d 1345 (1992). For that reason, it is on the same constitutional footing as the residual hearsay exception that was in issue in *Idaho v. Wright*, 497 US 805, 110 S Ct 3139, 111 L Ed 2d 638 (1990).

In *Wright*, the trial court had admitted into evidence statements that a two and one-half-year old declarant had made to an examining pediatrician. The court in *Renly*, citing *Wright*, noted that "[h]earsay is generally unreliable, because the declarant is not available for cross-examination that could uncover inaccuracies and other factors bearing on truthfulness and trustworthiness." *Renly*, 111 Or App at 460. Because the residual hearsay exception in *Wright* lacked the tradition of reliability that supports the admissibility of statements under a firmly rooted hearsay exception, the Supreme Court reversed the defendant's conviction on the ground that the defendant's constitutional right to confrontation had been denied.

In *Renly*, we said that the rationales underlying the Confrontation Clauses and the rule against hearsay are similiar. The admission of hearsay is predicated on a showing of particularized guarantees of trustworthiness, and a trial court should admit hearsay evidence only if it is trustworthy. In that case, the defendant argued that the trial court should have excluded under *Wright* the evidence of detailed statements made by a child victim to her mother which were testified to in court by the mother. We held that the provision of OEC 803(18a)(b) satisfied sixth amendment and Oregon constitutional provisions regarding the right to confront one's accusers. We then turned to the issue of whether the proffered evidence had *particularized guarantees* of trustworthiness in light of the requirements of the rule, inasmuch as it lacked *inherent* reliability. We noted that OEC 803(18a)(b) was enacted to address some of the difficulties with Oregon's residual hearsay exception and that it was the intention of the legislature that an accused not be convicted solely on the basis of hearsay. *See, e.g.*, Minutes, Senate Committee on the Judiciary, February 27, 1989, p 2 (testimony of Assistant Administrator of the Children's Services Division). As a result, OEC 803(18a)(b) imposes particular requirements

that supplant the inherent reliability that exists in other exceptions to the hearsay rule. Under (18a)(b), the victim must be subject to cross-examination, or, if unavailable for cross-examination, there must be independent corroborative evidence before more than evidence of the complaint of the victim of sexual abuse or conduct can be admitted. In *Renly*, there was no corroborative evidence of the details of the hearsay report, and accordingly, we reversed.

Here, the majority fails to acknowledge the problem under OEC 803(18a)(b) that exists because Jensen was permitted to testify to the details of what Eddie told mother. According to the majority, Eddie's availability for cross-examination makes Jensen's testimony about the details of the offenses admissible under OEC 803(18a)(b). 164 Or App at 475 n 3. The problem with that reasoning is that at the adjudication hearing Eddie denied that Christopher's conduct had occurred and that he had reported that conduct to mother. Eddie's alleged report of the details of the sexual conduct to mother is not inherently reliable. Although it could have been corroborated by his testimony and thereby could have met the corroboration requirements of the rule, his report was not corroborated because Eddie denied in his testimony reporting to mother that he had been sexually abused or had been subjected to sexual conduct by Christopher. Eddie's appearance as a witness satisfied the confrontation requirement of the rule but not the corroboration requirement.

What affords the particularized guarantee of trustworthiness under OEC 803(18a)(b) is the corroboration that occurs as the result of the cross-examination of the complaining witness or from corroborating evidence that is independent of the hearsay. In the typical case, the trier of fact has before it both the hearsay report of the details and the testimony of the complaining witness about the details. Under those circumstances, the testimony of the victim satisfies the corroboration requirement of the rule. This case is different because the state had no complaining witness. There is no evidence from Eddie's testimony that supports the adjudications. That leaves Jensen's testimony as the sole evidence about the details of the offenses, but that evidence is uncorroborated by any other evidence independent of Jensen's testimony. The majority affirms Christopher's adjudication on

double hearsay in the absence of any corroborative evidence, a result that the legislature expressly intended to avoid under OEC 803(18a)(b). Because OEC 805 requires that before double hearsay is admissible, both underlying layers must have sufficient marks of trustworthiness, Jensen's testimony about Eddie's report of the details of the incident is inadmissible. *See Vosika*, 83 Or App at 309 n 7 ("[t]he trustworthiness and reliability of a statement is relevant to *all* exceptions to the hearsay rule" (emphasis in original)).[5]

## III. OEC 803(4)

Even if Eddie's statements to mother are admissible under OEC 803(18a)(b), the second layer of Jensen's hearsay report consisting of mother's statement to her is not admissible under OEC 803(4). Statements made for the purpose of medical treatment are inherently reliable because a declarant of medical information does not ordinarily tell falsehoods to a medical provider when seeking treatment. In *State v. Moen*, 309 Or 45, 55, 786 P2d 111 (1990), the court held

"To be admissible under OEC 803(4), a statement must meet three requirements:

"(a)   The statement must be 'made for purposes of medical diagnosis or treatment';

"(b)   The statement must describe or relate 'medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof';

"(c)   The statement must be reasonably 'pertinent to diagnosis or treatment.' "

In terms of the standard of review that governs our review of the admissibility of evidence under OEC 803(4), it is established that

"[w]hether a statement meets the requirements of OEC 804(3) is a preliminary question of fact for the trial court. OEC 104(1); [*State v.*] *Barkley*, 315 Or [420,] 427 [846 P2d 390, *cert den* 510 US 837 (1993)]; *State v. Booth*, 124 Or App 282, 286, 862 P2d 518 (1993), *rev den* 319 Or 81, *cert den*

---

[5] *See also* Kirkpatrick, *Oregon Evidence* at 570 (stating that under OEC 803(18a)(b) that "[i]n cases where the child testifies, the rule would appear to satisfy the right of confrontation, *provided a careful assessment is made of the reliability of the hearsay statement*" (emphasis added)).

513 US 953, 115 S Ct 372 (1994). If there is evidence in the record from which the trial court could have found by a preponderance of the evidence that a child's statements were made for the purposes of medical diagnosis or treatment, we affirm the court's ruling. *Booth*, 124 Or App at 286." *State v. Mayer*, 146 Or App 86, 92, 932 P2d 570 (1997).

Here, there is no evidence that Eddie's statements about the details of the incidents were made to mother for the purpose of procuring his own medical treatment, and there is no evidence that mother's statements to Jensen were made to procure medical treatment for either Eddie or Christopher.

Christopher is a 13-year-old socially immature child suffering from hemophilia, a post-traumatic-stress disorder, separation anxiety and school phobia. The record does not indicate that Jensen is qualified to treat any of the above medical conditions. She is a licensed clinical social worker who works primarily with behavioral problems of adolescent sexual offenders. She came into contact with Christopher after receiving a referral from a mental health service involving mother and Christopher. As a result, they appeared in her office, and she made an evaluation of Christopher's sexual history and sexual behavior. Mother testified that she told Jensen,

"I expressed concerns about Chris's sexually acting out because of Dennis [mother's former boy friend] and he was going through puberty and I don't know how to explain the sex changes of life to a boy."

Mother went on to describe various instances of sexual conduct by Christopher, some of which involved Eddie. According to Jensen, one of those instances involved Christopher masturbating in Eddie's presence. Jensen testified that she explained to mother that the purpose of the evaluation "was narrowly focused to look at sexual history and Christopher's potential for acting out in the future, sexual acting out." In the typical case involving hearsay testimony of victims of sexual offenses, the physician procures a history from the victim in order to make a medical diagnosis about whether the *victim* has been sexually abused. The information elicited helps the physician to evaluate the cause of the victim's symptoms through a differential methodology. The

patient is motivated to speak truthfully and accurately because the diagnosis and treatment depend, at least in part, on the information communicated. Also, the law recognizes that a fact reliable enough to depend on as a basis for a medical diagnosis and treatment has sufficient guarantees of trustworthiness to constitute an exception to the general inadmissibility of hearsay.[6]

This case presents an entirely different situation that is inconsistent with the polices underlying the typical case where information given for medical purposes is properly admitted under OEC 803(4). First, mother did not describe the details of her sons' conduct for purposes of a medical diagnosis or treatment of a physical or mental disorder. She was there because she wanted information and help on what she could do regarding the conduct of her children. Her inquiry is comparable to a parent going to a school or family counselor to obtain assistance about how to parent more effectively. Second, her statements that led to the adjudications did not describe Eddie's or Christopher's medical symptoms, pain or the cause thereof. Although the details of Christopher's conduct could have been probative to an evaluation of whether he will become a criminal sex offender in the future, they were not offered so that Jensen could make a diagnosis of a medical condition from which he suffers or to provide treatment for a previously diagnosed disorder. In mother's words, "I wanted somebody to explain the facts of life to Chris because I, I didn't understand a lot of what was going on with him. He's going through puberty * * * I don't know nothing about male puberty, nothing." In the typical case, the conduct of a sexual offender is part of the medical history related by the victim so that the victim can receive proper medical treatment. Here, the conduct of the alleged offender was related in an effort to seek nonmedical help for the alleged offender. Consequently, mother's statements do not meet either the second or third requirements articulated in *Moen* which guarantee reliability.

---

[6] An instructive discussion of the policies underlying the reliability of statements made for the purpose of medical diagnoses can be found in *United States v. Renville,* 779 F2d 430 (8th Cir 1985).

The reliability of the evidence hinges on the declarant's motivation, not the treatment provider's expression of the reason for involvement. *See State v. Logan*, 105 Or App 556, 562, 806 P2d 137, *rev dismissed* 312 Or 16 (1991).[7] Our cases examine facts like location (hospital versus private office), connection with a physical examination (social worker in room during physical or introduced as a continuation of examination or interview with social worker observed by physician through one-way mirror), and use of the social worker's information gathering (to protect victim from intrafamilial abusers, to treat the victim, or to confirm or support diagnosis). *See, e.g., Logan*, 105 Or App at 559; *see also State v. Jensen*, 313 Or 587, 593-96, 837 P2d 525 (1992). These facts are used to support a finding under the first of the *Moen* requirements. It is because there is an absence of these kinds of facts in this case that the state has failed to meet its burden to demonstrate by a preponderance of the evidence that mother's statements were made for the purposes of medical diagnosis or treatment of Christopher.

The second policy justification, that a fact reliable enough for a medical diagnosis is reliable enough to escape the proscription against hearsay evidence, is also missing. The details of the incident came from the lips of Eddie, who had no motivation to speak accurately. *His* medical treatment or diagnosis was not dependent on the information disclosed. Moreover, Jensen did not elicit the information to make a medical diagnosis about Eddie, the initial declarant of the information. As she testified, her focus was on Christopher. Under the facts of this case, the state has not met its burden to demonstrate by a preponderance of the evidence

---

[7] *Accord Barkley*, 315 Or at 424-26 (holding that whether a child made statements for the purposes of that child's medical diagnosis or treatment must be determined by reference to the circumstance in which the child made the statements); *Mayer*, 146 Or App at 93 (focusing on what the child knew and understood about the examination); *State ex rel Juv. Dept. v. Cornett*, 121 Or App 264, 271, 855 P2d 171 (1993), *rev dismissed* 318 Or 323 (1994) ("we must examine the facts to determine the particular child's understanding" of the nature of a medical examination); *Booth*, 124 Or App at 287 (same); *but see State v. Vosika*, 83 Or App 298, 309, 731 P2d 449, *on recons* 85 Or App 148, 735 P2d 1273 (1987) (holding that, despite the fact that the three-year-old victim was "too young to understand that the statements she was making could be related to her diagnosis or treatment[,]" the victim's statements to a physician were themselves inherently reliable).

that mother's statements relaying Eddie's complaints met the *Moen* requirements.

## IV.   OEC 805

OEC 805 is not without history regarding when it is appropriate to stack hearsay upon hearsay for medical treatment purposes. The legislative commentary provides two examples of when double hearsay will be admissible and concludes that the rule is intended to be in accord with current Oregon practice. Kirkpatrick, *Oregon Evidence* at 627. An exploration of those examples is instructive as to when OEC 805 ought to be employed in this context. The first example is *Mayor v. Dowsett*, 240 Or 196, 400 P2d 234 (1965). In *Mayor*, a spouse furnished information about the patient to the hospital, whose records reflected the information. *Id.* at 221. At trial, the records were admitted into evidence. The evidence had sufficient guarantees of trustworthiness because the declarant's motive was the same as the motive of the hospital: to provide an accurate record for purposes of treatment. The second example is *Williams v. Laurence-David*, 271 Or 712, 534 P2d 173 (1975). In *Williams*, the court upheld the admission of a medical record of a deceased physician that contained a statement by a patient. *Id.* at 721. Again, the evidence had sufficient guarantees of trustworthiness because the declarant's motive was the same as the motive of the physician. In contrast, Eddie's statements to mother were not prompted by a need for medical treatment, and his motive differs from the motive for mother's report to Jensen. As the majority acknowledges, Eddie's motive may reasonably be suspect. 164 Or App at 485 n 14.

In summary, this case presents an important issue about what evidence can be the basis for a juvenile adjudication or an adult conviction for a criminal offense. The legislature's intent regarding OEC 803(18a)(a) and (b) is clear. It did not intend that alleged offenders could be convicted on hearsay alone and without any corroboration, which is what occurred in this case. It is also apparent that mother's report to Jensen does not satisfy the underlying policy justifications for OEC 803(4) for the reasons expressed above. Thus, both layers of hearsay lack sufficient guarantees of trustworthiness. Admissibility of evidence under OEC 805 is predicated

on each link in the chain of hearsay having sufficient indicia of reliability. Only then can the whole be admitted. Of course, inadmissibility results when only one link fails to survive scrutiny. In light of the fact that the integrity of the judicial process depends on adjudications and convictions that are based on reliable evidence, the majority's reasoning is not only disturbing but it creates a significant and erroneous precedent for the admission of unreliable hearsay in sex offense related prosecutions.

I dissent.

**ARMSTRONG, J.,** dissenting.

I dissent for the reasons stated in Judge Wollheim's dissent and in parts III and IV of Judge Edmonds' dissent.

**WOLLHEIM, J.,** dissenting.

I do not agree with the majority that the trial court's judgment in favor of the state can be affirmed as "right for the wrong reasons" on the basis of a reason that the state conceded to be wrong in the trial court but now seeks to revitalize on appeal.

I disagree initially with the majority's essential starting premise that the so-called "right for the wrong reason doctrine" was intended to be or has ever been applied in a situation such as this. It is one thing to say that an appellate court may sometimes sustain a trial court's admission of evidence or other ruling for reasons that differ from those on which the ruling was based. It is quite another thing to say that a party may expressly disavow any reliance on a particular ground for a ruling at trial, and thereby circumvent or abort the opposing party's need or opportunity for a factual or legal response, but may then successfully seek an affirmance on appeal by relying on the ground for the ruling that it previously disavowed.

Even given the majority's apparently broader view of the appropriate uses of the "right for the wrong reason doctrine," however, I am nevertheless unable to agree with the result the majority reaches here. The majority states:

"The necessary and practical predicate for applying that principle is that the record is adequately developed to support the alternative grounds. * * * If, however, the alternative ground for affirmance—and, particularly, for admission of evidence—is asserted for the first time on appeal and if it appears that the opposing party could have developed the record differently had that ground been raised at trial, then preservation principles preclude reliance on the new, alternative ground." 164 Or App at 478 (citations omitted).

The majority further states that certain factual matters that are integral to the application of OEC 803(4) "must be assessed by the court on a case-by-case basis." 164 Or App at 482 (footnote omitted). Notwithstanding those statements, however, the majority postulates that it "do[es] not believe that the state's concession materially affected the development of the record with respect to the (in)applicability of OEC 803(4)" in this case. 164 Or App at 478. The question, of course, is what is the basis for the majority's belief? Child had no reason to make a record—let alone his best case—about an issue that the state's concession and its stated bases for offering the evidence made irrelevant. In fact, if child attempted to make such a record, then the trial court would have prevented any such effort based on the state's concession.

Finally, the majority insists that one of the purposes of the doctrine it invokes is "to avoid an unnecessary remand." 164 Or App at 478. The majority proceeds to imply that a reversal and remand here would be without purpose, because the state could simply offer the same evidence for the "right" reason at any retrial, and it would be properly received, presumably leading to the same ultimate result as the one under review. My reason for disagreeing with that ground for the majority's conclusion is the complement of my reasons for disagreeing with its other grounds. Just as this court should not permit the state's tactic to obscure our function of identifying and remedying error, we should not deter ourselves from performing that function by speculating how the state will later perform its appropriate functions. Once we have reversed and remanded, it is up to the state, not us,

to decide whether there will be any further proceedings at which to use the evidence.[1]

In the alternative, once we have reversed and remanded, the state would be precluded from arguing that the disputed evidence was admissible under the medical diagnosis exception to the hearsay rule due to the law of the case doctrine. That doctrine was described in *State v. Pratt*, 316 Or 561, 569, 853 P2d 827 (1993) (quoting with approval from *Simmons v. Wash. F.N. Ins. Co.*, 140 Or 164, 166, 13 P2d 366 (1932)):

> " 'It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.' "

I respectfully dissent.

---

[1] It is far from apparent that the state has given enough thought to whether and how to proceed in a matter like this one.